Submitted on remand from the Oregon Supreme Court, November 16, 1982, resubmitted In Banc May 2, affirmed June 13, reconsideration denied July 13, petition for review denied August 8, 1984 (297 Or 547)

## STATE OF OREGON,
*Respondent,*

*v.*

## MICHAEL FESLER,
*Appellant.*

### (81-169C; CA A23875; SC 28897)

685 P2d 1014

John Daugirda, Deputy Public Defender, Salem, argued the cause for appellant. With him on the brief was Gary D. Babcock, Public Defender, Salem.

Stephen F. Peifer, Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were Dave Frohnmayer, Attorney General, and William F. Gary, Solicitor General, Salem.

GILLETTE, J.

Young, J., dissenting.

**GILLETTE, J.**

In this criminal case we affirmed without opinion defendant's conviction for possession of a controlled substance when it was first before us. *State v. Fesler,* 58 Or App 389, 650 P2d 1097 (1982). The Supreme Court thereafter accepted review and remanded the case for reconsideration in light of *State v. Caraher,* 293 Or 741, 653 P2d 942 (1982). 294 Or 77, 653 P2d 959 (1982). Since then, the Supreme Court has made clear its determination, first expressed in *Caraher,* to decide search and seizure cases primarily under the Oregon Constitution and to reach federal issues only if the state constitution does not provide the protection the defendant seeks. *State v. Lowry,* 295 Or 337, 667 P2d 996 (1983); *see also State v. Flores,* 68 Or App 617, 685 P2d 999 (1984). We have reconsidered this case in light of both *Caraher* and *Lowry.* We once again affirm.

When an officer stopped defendant for driving with an expired license plate, defendant claimed that his name was John Davis and that he had borrowed the car he was driving from a friend. He produced no identification in the name of Davis but did provide a registration card in his true name and a letter from the Motor Vehicles Division indicating that one Fesler's license was suspended. The officer determined that there was no driver's license issued in the Davis name and asked another officer to go to the vehicle's registered address for verification. That officer found defendant's wife at the address. She said that defendant should be driving the car and gave an accurate description of him. When confronted with this information, defendant admitted his true identity; the officer thereupon arrested him for driving while suspended, ORS 487.560, and for giving a false name to a police officer, ORS 482.610(4).

After the arrest, the officer frisked defendant for weapons but found none. He also found no wallet or other identification. He then placed defendant in his patrol car and went to lock defendant's car, both at defendant's request and as a normal procedure. Before locking the car, he searched the interior for identification. When he lifted a down vest on the back seat, two bags of marijuana fell out of a pocket; they are the bases for defendant's conviction in this case.

■ Defendant does not challenge the officer's actions before he searched the car, and he apparently concedes that the officer had probable cause to arrest him on both traffic charges. The issue is whether the search of the interior of the car is sustainable either as a search incident to an arrest or on the basis of probable cause and exigent circumstances. Oregon recognizes both exceptions to the warrant requirement under the Oregon Constitution. *See State v. Caraher, supra; State v. Elk,* 249 Or 614, 624-25, 439 P2d 1011 (1969) (O'Connell, J., concurring; Denecke, J., concurring) (probable cause and exigent circumstances); *State v. Flores, supra.* We first consider whether the search here was permissible incident to an arrest.

Because defendant was stopped in his car and properly arrested as a result of the stop, the federal rule of *New York v. Belton,* 453 US 454, 101 S Ct 2860, 69 L Ed 2d 768 (1981), would appear to permit this search. In *Belton,* the Supreme Court modified the general rule of reasonableness in evaluating searches incident to arrest and established a "bright line" rule allowing searches of the passenger compartment of an automobile, including closed containers, without restriction. We do not believe, however, that the *Belton* rule satisfies the Oregon constitution.

■ In *State v. Caraher, supra,* 293 Or at 747-48, the court pointed out that *Belton* simply applied the "area of immediate control" test, found in *Chimel v. California,* 395 US 752, 89 S Ct 2034, 23 L Ed 2d 685 (1969), to a specific situation. The Oregon court chose not to adopt such a "bright line" approach in *Caraher,* and we believe that it will continue to evaluate the reasonableness of each search incident to an arrest on its particular facts rather than attempt to draw a "bright line." In Oregon, a search incident to an arrest does not require probable cause beyond the basis for the arrest itself. It must, however, be reasonable in scope and, when it is not for the purpose of protecting the officer's safety or preventing the destruction of evidence, it must be related to the crime for which the defendant was arrested. *State v. Lowry, supra; State v. Caraher, supra; State v. O'Neal,* 251 Or 163, 444 P2d 951 (1969);[1] *State v. Flores, supra.*

---

[1] *State v. O'Neal* does not cite the state or federal constitutions, but the cases on which it relies are based on the state constitution, and we therefore treat *O'Neal* as a state constitutional case. That is how the Supreme Court viewed it in *State v. Caraher,*

There is no suggestion in this case that the search of the car was occasioned by a desire to protect the officers' safety or to prevent the destruction of evidence. The question remains whether the police were looking—and had the right to look—for evidence of the offenses for which defendant was arrested. While evidence relating to the offenses for which defendant was arrested—driving while suspended and giving a false name—is not generally the kind to be found lying around or hidden just any place, we hold that it would be reasonable to look for the kind of evidence the officer was looking for here.

Defendant gave the officer a false name and persisted in that falsehood until confronted with the results of a collateral investigation. The officer had probable cause to arrest defendant and charge him with driving while suspended and giving a false name. That he had probable cause to charge defendant does not prevent further investigation. *State v. Caraher, supra,* 293 Or at 759. Defendant had already shown a piece of identification in another name. Specifically, we hold that it was reasonable to search for defendant's wallet and the identification it could be expected to contain. Such a search would relate to the offense for which defendant was arrested in two ways: it would further serve to identify defendant and, because defendant's knowledge he was suspended may be a pertinent consideration in such cases, it would further tend to show defendant's consciousness of guilt if the wallet had been hidden. We hold that a search of the kind conducted here meets *Caraher's* requirement that it be for evidence of the offense for which defendant is under arrest.

To be a proper search incident to arrest, however, it is also necessary that the search be reasonably close in time and space to the arrest. *State v. Caraher, supra,* 293 Or at 758; *see also State v. Chinn,* 231 Or 259, 273, 373 P2d 392 (1962). As to time, the search was substantially contemporaneous with the arrest. As to space, there is attenuation only in the sense that defendant was first placed in a patrol car. We have no

*supra.* In *State v. Florance,* 270 Or 169, 527 P2d 1202 (1974), the Supreme Court overruled *O'Neal* and adopted the rule of *United States v. Robinson,* 414 US 218, 94 S Ct 467, 38 L Ed 2d 427 (1973), allowing a search incident to an arrest without regard to its relevance to the crime for which the person was arrested. In *State v. Lowry, supra,* and *State v. Caraher, supra,* the Supreme Court favorably cited the *O'Neal* requirement that the search be related to the crime which justified the arrest. We conclude, as did Judge Jones in his concurrence in *State v. Lowry, supra,* 295 Or at 353-55, that the Supreme Court has overruled *Florance.*

difficulty in saying that, had the officer conducted his search while the defendant was standing outside the car, the search would be permissible. Should the fact that he had been secured in the patrol car matter?

We think not. To let the validity of this on-the-scene search turn on *that* distinction would, we think, be a "towering triumph of form over substance * * *." *State v. Evans,* 48 Or App 771, 617 P2d 942 (1980), *rev'd* 290 Or 707, 625 P2d 1300 (1981). The Supreme Court apparently recognized as much in *Caraher* when it sustained—*albeit* without comment—the search of defendant's purse and wallet in a police car after defendant had been handcuffed and placed in the back seat of the car behind a barrier. We hold that this search had not become so separated as to time and place from the arrest that it required the officers to stop what they were doing and obtain a warrant. *Accord, State v. Flores, supra.*

Affirmed.

**YOUNG, J.,** dissenting.

I would hold that the search of defendant's car violated Article I, section 9, and that the marijuana should have been suppressed.

I disagree with the majority in two ways. First, under the facts of this case, the search was not reasonable in scope or intensity. Second, in their determination of reasonableness the majority fails to take into consideration the question of whether the officer had an opportunity to obtain a search warrant.

Concerning the facts in applying the test of reasonableness, defendant was arrested for driving while suspended and giving a false name to a police officer. These are not possessory offenses, as were the offenses in *State v. Caraher,* 293 Or 741, 653 P2d 942 (1982), and *State v. Flores,* 68 Or App 617, 685 P2d 999 (1984). There was nothing, beyond the officer's experience with other men, to indicate that evidence of those offenses might be in the car. Yet the court's analysis is far more cursory than are the analyses in *Caraher* and *Flores.*[1]

---

[1]The officer based his search on his experience that most men carry wallets and on the fact that he had not found one on defendant. That reason is much weaker than were the direct statements of the defendant and her companion in *State v. Caraher, supra,* or the actual discovery of contraband on the defendant's person in circumstances which directly related it to the paper sack next to the driver's seat in *State v. Flores, supra.*

In *Caraher,* the search was of the defendant's purse, which she was carrying at the time of the arrest. In *Flores,* the search was of the passenger compartment of the defendant's automobile. The court in *Caraher* noted that "the nature of the crime, *i.e.,* possession, and the circumstances involved here, defendant's admission that she was selling 'bunk' and her companion's statement that she was selling cocaine," justified the search. 293 Or at 759. In *Flores,* this court went through a careful analysis, based on successive discoveries of contraband, to justify the search. It did not assume that a search of the entire passenger compartment of defendant's automobile would have been reasonably incident to his arrest for possession of marijuana. In this case, in contrast, the court simply approves the search, apparently having difficulty only with the officer's placing defendant in the police car before searching. Yet the likelihood of finding evidence of the crimes for which defendant was arrested was significantly smaller in this case than it was in *Caraher* and *Flores,* and the scope of the search was much broader. Searches of a purse a defendant is carrying, and of a paper bag next to the defendant's seat, from which the defendant just took some contraband, are obviously much closer in scope and intensity to the basis for the defendant's arrest than is the search of an entire passenger compartment before anything is found in it.

The majority determines that defendant's arrest and placement in the patrol car did not sufficiently alter the spatial relationship between the arrest and the subsequent search to invalidate the search. The majority misses the mark because it has left out a fourth consideration in determining reasonableness. In addition to time, scope and intensity the court should consider whether there was an opportunity to obtain a search warrant. *State v. Chinn,* 231 Or 259, 373 P2d 392 (1962). The court reasoned in *Chinn* that "a search might be held unreasonable if the officers had ample opportunity to consult a magistrate and obtain a search warrant but failed to do so." 231 Or at 268. The court reaffirmed *Chinn's* reasoning in *State v. Lowry,* 295 Or 337, 667 P2d 996 (1983).

"The time to make the judicial determination whether there is probable cause for a search or seizure, if time permits, is before the individual's privacy is invaded * * *. The reasons for the exception from the rule are always one form or another of practical necessity to act before a warrant can be obtained." 295 Or at 336-37.

In this instance defendant was under arrest and in the patrol car. The officer intended to lock the car. There is no indication that anyone else had access to the car. In such circumstances there is no practical necessity to conduct an immediate search and there was an adequate opportunity to apply for a search warrant.

Although the search in this case was related to the crimes for which defendant was arrested, I would hold that it was not reasonable in scope or intensity and that the police officers had an opportunity to obtain a warrant. The crimes were not ones of possession, the likelihood of finding additional evidence was not great, the search was highly intrusive, the defendant was secured, the car was immobilized and there was no evidence of others having access to it. If this search is permissible, this court has come close to adopting the rule of *New York v. Belton,* 453 US 454, 101 S Ct 2860, 69 L Ed 2d 768 (1981), permitting searches of the entire passenger compartments of automobiles incident to arrest, under the Oregon Constitution. I do not think that either *Belton* or this search is consistent with the careful analysis of searches incident to arrest our Supreme Court has established, and I therefore dissent.

Joseph, C. J., and Newman, J., join in this opinion.