Argued and submitted September 20, 1983, reversed and
remanded August 8, reconsideration denied September 28,
petition for review denied October 30, 1984 (298 Or 151)

## STATE OF OREGON,
*Appellant,*

*v.*

## WILLIAM MARVIN KIRSCH,
*Respondent.*

(133,823; CA A27640)

686 P2d 446

Thomas H. Denney, Assistant Attorney General, Salem, argued the cause and filed the brief for appellant. With him on the brief were Dave Frohnmayer, Attorney General, and James E. Mountain, Jr., Deputy Solicitor General, Salem.

Stephen J. Williams, Deputy Public Defender, Salem, argued the cause and filed the brief for respondent. With him on the brief was Gary D. Babcock, Public Defender, Salem.

Before Gillette, Presiding Judge, and Warden and Young, Judges.

GILLETTE, P. J.

Young, J., dissenting.

## GILLETTE, P. J.

The state appeals the pretrial suppression of methamphetamine which was seized from defendant's vehicle during a warrantless search that followed his arrest for driving while under the influence of intoxicants, ORS 487.540, and for the possession of an explosive (dynamite) without a valid certificate. ORS 480.210. The trial court ruled that there were no exigent circumstances to justify the search and seizure. The state contends that the controlled substance was admissible, because the search and seizure were based on probable cause and were also incident to a lawful arrest. We agree with the second point and reverse and remand for trial.

Sergeant Sitton of the State Police observed defendant driving erratically and signaled him to stop. As Sitton approached the vehicle, he saw defendant and his two passengers bend over as if they were handling something on the floor. Sitton noticed an odor of alcohol on defendant's breath. Defendant admitted drinking some beer. Sitton asked defendant to get out of the car. As he did so, Sitton saw an open beer can on the floor and immediately seized it. While seizing the can, Sitton saw another beer can at the feet of a front seat passenger and directed that passenger to hand him the can. Sitton used his flashlight to light the floor of the car as the passenger reached for the can and saw what appeared to be four sticks of dynamite in an open milk carton on the floor. Sitton then ordered the passengers out of the car and seized the sticks, which proved to be one highway flare by itself and three sticks of dynamite taped together. He seized those items. Because it was cold, Sitton allowed defendant and his passengers back into defendant's car. As one passenger got in, he made a "throwing motion," and Sitton heard something hit the ground. He investigated and found a brown paper bag, which contained marijuana, about six to eight feet from the car. The bag was dry, although the night was damp.

After those discoveries, Sitton radioed for assistance. He sat in his patrol car and watched the occupants of defendant's car for the 10 or 15 minutes it took for help to arrive. When it did, Sitton gave defendant field sobriety tests and arrested him for DUII; he also planned to arrest him for possession of a controlled substance and for possession of an explosive. He placed defendant in a patrol car, while another

officer watched the two passengers. Sitton and a third officer then searched the interior of the vehicle. This search turned up, among other items, two "bundles" of white powder located under the front seat and two plastic boxes containing a white powder residue in the glove compartment. The officers seized those items, which are the evidence in question, and arrested the passengers.

The trial judge reasoned that once defendant and his passengers were arrested and removed from the vehicle no further exigency existed and the subsequent warrantless search of the vehicle and seizure of the white powder was unlawful. He did not directly rule on the state's claim that the search was proper as incident to defendant's arrest.

We address first the validity of the search under the Oregon Constitution, Article I, section 9. *State v. Lowry,* 295 Or 337, 667 P2d 996 (1983); *State v. Kennedy,* 295 Or 260, 666 P2d 1316 (1983). The state contends that the discovery of the marijuana and the dynamite gave the officers probable cause to believe that the vehicle contained additional contraband. It cites *United States v. Ross,* 456 US 798, 102 S Ct 2157, 72 L Ed 2d 572 (1982), for the proposition that, when officers have probable cause to believe that a vehicle contains contraband, they may search the vehicle immediately without a warrant. *Ross* is based on the "automobile exception" under the Fourth Amendment. There is no "automobile exception" under the Oregon Constitution. That term, to the extent that it has any meaning, is merely a shorthand recognition that an auto-mobile's mobility may produce exigent circumstances in par-ticular situations. When there is no likelihood that the vehicle will be driven away or evidence removed from it before a warrant can be obtained, there is no exigency, and probable cause alone will not support a warrantless search. *State v. Fondren,* 285 Or 361, 591 P2d 1374, *cert denied* 444 US 834 (1979); *State v. Greene,* 285 Or 337, 591 P2d 1362 (1979).

In this case, the trial judge found that the occupants of the vehicle were in fact under arrest and placed in custody before the search and that there were no longer any exigent circumstances to justify the search. The judge explained:

> "Now the reason why the courts have been lenient on giving permission to search a car without a warrant is because of the very nature of the beast. It has a habit of running away

when—before the police officers can get it. But in this instance, the police officers had the critter corraled, they were the ones who were basically in possession of that vehicle. They had the opportunity to have it towed. And when it was towed, then they could come to the Court, to the District Court and obtain a Search Warrant."

We agree.

■    The state's second contention is that the search was incident to a lawful arrest. Such a search requires neither probable cause nor exigent circumstances beyond the fact of a lawful arrest. It is, however, subject to its own limitations. The state cites *New York v. Belton,* 453 US 454, 101 S Ct 2860, 69 L Ed 2d 768 (1981), another Fourth Amendment case, for the proposition that an officer who has made a lawful custodial arrest of the occupant of a vehicle may, as a contemporaneous incident of that arrest, search the interior of the vehicle, including any containers in it. *Belton* is not the law of Oregon. *State v. Fesler,* 68 Or App 609, 612, 685 P2d 1014 (1984). Under Article I, section 9, a warrantless search is permissible as incident to an arrest when it is for the protection of the officer, the preservation of evidence, or "when it is relevant to the crime for which defendant is being arrested and so long as it is *reasonable* in light of all the facts." *State v. Caraher,* 293 Or 741, 759, 653 P2d 942 (1982) (emphasis supplied); *see also State v. O'Neal,* 251 Or 163, 444 P2d 951 (1968); *State v. Krogness,* 238 Or 135, 388 P2d 120 (1963); *State v. Chinn,* 231 Or 259, 373 P2d 392 (1962).

■ ■    A search incident to arrest must be reasonable in scope, time and intensity. *State v. Caraher,* 293 Or at 758; *State v. Chinn, supra.* It may not be an exploratory search but must be closely tied to the crime or crimes for which the police have a right to arrest the person searched. A different rule "would open the door to complete temporary confiscation of all an arrested person's property which was in his immediate possession and control at the time of his arrest for the purpose of minute examination of it in an effort to connect him with another crime." *State v. Elkins,* 245 Or 279, 287, 422 P2d 250 (1966). Because a search incident to an arrest is a warrantless search, the opportunity to obtain a warrant is an important limitation on the right to continue the search. "[W]hen a search reaches a logical stopping point the police *must seek a*

*warrant* before proceeding further." *State v. Flores,* 68 Or App 617, 634, 685 P2d 999 (1984). (Emphasis supplied.)

Recent search cases decided under the Oregon Constitution illustrate these points. In *State v. Caraher, supra,* the Supreme Court upheld a search of the defendant's purse after her arrest. The defendant was locked in the back seat of a police car at the time of the search, but it occurred soon after her arrest and there were strong reasons for believing that there was evidence of the crime for which she was arrested in the purse. In *State v. Lowry, supra,* the Supreme Court upheld a search of the defendant incident to a DUII arrest and the seizure of a bottle containing a white powder which the searching officer found on him. It held, however, that the warrantless testing of the powder was illegal. Whatever the analytical problems may be with *Lowry, see State v. Flores, supra,* 68 Or App at 627-34, it is clear that the seizure of the bottle constituted a logical stopping point. In *State v. Flores, supra,* we upheld the search of an automobile which was one continuous process and which resulted in continuing discoveries of contraband. We found no logical intermediate stopping point for the search. Finally, in *State v. Fesler, supra,* we upheld the search of clothing in the back seat of an automobile. Although the crime for which the defendant was arrested was not one of possession, the search was narrowly limited in its scope and intensity and was for a specific purpose directly related to the reason for the arrest. The officer's discovery of contraband was unexpected, and the limited nature of the search made it permissible.

■ In this case the search was reasonable. The crimes for which Sitton had probable cause to arrest defendant at the time of the search, and for which he intended to arrest him, were crimes of possession. Discovery of a significant amount of marijuana made it reasonable to believe that the car contained additional controlled substances. Discovery of the dynamite made it reasonable to believe that the car contained additional explosives. The search was in an area within defendant's immediate control, and it was close in time to the arrest. The serious character of the items for whose possession defendant was under arrest justified an intensive search of the entire passenger compartment of the car. The search was close in time to the arrest.

■ In contrast to the dissent, we find no logical stopping point for this search. The fact that Sitton had to call in other officers to help before searching did not mean that he also had to call a judge before searching. The entire episode was one continuing encounter, which took a relatively short time, and we will not impose an unrealistic and unnecessary warrant requirement on it. "[R]equiring officers to stop midway in a search like the present one, leave everyone in limbo, and seek a warrant would tend to benefit only the stationers who sell blank search warrant forms." *State v. Flores, supra,* 68 Or App at 634. The search was proper under Article I, section 9. It also did not violate the federal constitution. *New York v. Belton, supra.* The trial court should not have suppressed the evidence.

Reversed and remanded.

**YOUNG, J.,** dissenting.

Because I believe that the officers should have obtained a warrant before conducting the second, intensive search of the car, I dissent. In *State v. Flores,* 68 Or App 617, 634, 685 P2d 999 (1984), we said that "when a search reaches a logical stopping point *the police must obtain a warrant before proceeding further.*" (Emphasis supplied.) The majority recognizes this requirement and then avoids it. As a result, it fails to give guidance to officers as they try to determine when they must take their case to a judge before continuing to search, and it fails to give the protection which Article I, section 9, provides for the citizens of Oregon.

Every encounter between the police and citizens has its own rhythm, and when the encounter results in an arrest the police have a right to search incident to that arrest so long as there is no break in the rhythm and it does not last too long or stray too far from the original beat. When the rhythm reaches a natural rest, the right to search incident to the arrest also ends. That is the point of *Flores,* and that is also one of the points of *State v. Lowry,* 295 Or 337, 667 P2d 996 (1983), which *Flores* attempted to interpret. In *Lowry* the discovery of the pill bottle containing a powder broke the rhythm of the encounter. In *Flores* the search was continuous, and the majority found no break in the rhythm. In this case the natural rhythm of the encounter reached a rest when Sergeant Sitton allowed defendant and his companions back into the

car and then returned to his patrol car and called for help. There was a break of ten to fifteen minutes at that point. After help arrived, and before the intensive search began, all three occupants of the car were effectively under arrest. Defendant was in the back seat of the patrol car. Sitton had completed searches of the people involved and had already made a limited search of the car. The police were in complete control of the situation and had the ability to impound and tow the car. The search had reached a logical stopping point. The subsequent search was thus not properly incident to arrest.

The majority emphasizes that it was highly likely that this search would be productive. I do not disagree. Indeed, I doubt if there is a judge in the state who would refuse a warrant on these facts. That is not the point. A search incident to arrest is based on a limited exception to the warrant requirement, justified by "practical necessity" in some sense of the term. *State v. Lowry, supra,* 295 Or at 347; *see State v. Flores, supra,* 68 Or App at 628-29. Such a search need only be reasonable; it does not require probable cause beyond that required for the arrest itself. *State v. Fesler,* 68 Or App 609, 612, 685 P2d 1014 (1984). A search incident to arrest may thus be proper even when probable cause, which would justify the issuance of a search warrant, is lacking, as may be the case, for instance, when the arrest is made by officers who are simply executing an arrest warrant. *See, e.g., State v. Cota,* 66 Or App 650, 675 P2d 1101, *rev den* 297 Or 124 (1984). The requirement that the search end when it reaches a logical stopping point is a primary method of keeping the search incident to arrest exception within proper limits. If the police can continue searching despite the opportunity they had here to seek a warrant, they can do so in other situations where the search cannot be supported by probable cause and therefore could not legally occur except for the exception. The result will be to undercut both the probable cause and the warrant requirements of Article I, section 9, and the citizens of Oregon will not have the protection for their "persons, houses, papers, and effects" which they thought their constitution had secured them. I cannot agree with that result and therefore dissent.