COURT OF APPEALS OF VIRGINIA

Present: Judges Frank, Kelsey and Powell
Argued at Chesapeake, Virginia

RAYMONT DANTE ARMSTEAD

OPINION BY
v.      Record No. 1347-09-1          JUDGE D. ARTHUR KELSEY
JULY 27, 2010

COMMONWEALTH OF VIRGINIA

FROM THE CIRCUIT COURT OF THE CITY OF NEWPORT NEWS
Timothy S. Fisher, Judge

Charles E. Haden for appellant.

Leah A. Darron, Senior Assistant Attorney General (Kenneth T.
Cuccinelli, II, Attorney General, on brief), for appellee.

The trial court found Raymont Dante Armstead guilty of providing false information to a

law enforcement officer, driving on a suspended operator's license, possession of cocaine with

intent to distribute, and possession of marijuana. On appeal, Armstead contends the court should

have suppressed most, if not all, of the incriminating evidence. He also claims the evidence was

insufficient to support his drug convictions. Finding neither argument persuasive, we affirm.

I.

On appeal, we review the evidence in the "light most favorable" to the Commonwealth.

Commonwealth v. Hudson, 265 Va. 505, 514, 578 S.E.2d 781, 786 (2003). This principle

requires us to "discard the evidence of the accused in conflict with that of the Commonwealth,

and regard as true all the credible evidence favorable to the Commonwealth and all fair

inferences to be drawn therefrom." Parks v. Commonwealth, 221 Va. 492, 498, 270 S.E.2d 755,

759 (1980) (emphasis and citation omitted).

In addition, our examination of the record "is not limited to the evidence mentioned by a party in trial argument or by the trial court in its ruling." Bolden v. Commonwealth, 275 Va. 144, 147, 654 S.E.2d 584, 586 (2008). In determining whether there is evidence to sustain a conviction, an appellate court must consider "all the evidence" admitted at trial that is contained in the record. Hamilton v. Commonwealth, 279 Va. 94, 103, 688 S.E.2d 168, 173 (2010) (quoting Bolden, 275 Va. at 147, 654 S.E.2d at 586).

In July 2006, a Newport News police officer made a stop of a vehicle suspected of violating a city noise ordinance. Armstead was alone in the vehicle. The officer asked Armstead for his driver's license and vehicle registration. Armstead said he currently held a Virginia driver's license but had no type of documentary identification with him. He provided verbal information including a name, birth date, and social security number. The officer checked this information on his computer and concluded the information was likely false.

Armstead then informed the officer he was licensed in Washington D.C. The officer checked this information and determined the only driver's license associated with the name given had expired. Believing Armstead again provided false information, the officer informed him he was under arrest.

It was impossible, however, to fill out the arrest paperwork without knowing Armstead's true identity. "If there's no I.D.," the officer testified, "there's no way to verify his identity." Before leaving the scene, the officer decided to search the vehicle. At trial,[1] the officer explained:

> Q: And just for the purpose of the record, why was it you that [sic] placed him under arrest?

---

[1] "When affirming a trial court's denial of a suppression motion, we consider facts presented both at the suppression hearing and at trial." Testa v. Commonwealth, 55 Va. App. 275, 279, 685 S.E.2d 213, 215 (2009).

A: I believe he was giving me false information . . . someone giving me false information leads me to believe they have no intention of appearing in court, and I didn't feel like I could satisfactorily fill out the summons because I didn't believe with the information at the time that the subject would appear in court. I elected to take him in front of a magistrate.

Q: Were you ultimately able to determine who he was?

A: Yes.

Q: How did you do that?

A: Searched the vehicle incident to arrest and located a wallet with Virginia identification.

While in the vehicle, the officer observed the remains of a marijuana cigar in an open ashtray and two clear plastic bags containing 5.675 grams of crack cocaine in the center console. Another officer later seized the drugs and placed them in evidence retention bags.

After being advised of his Miranda rights, Armstead invoked his right to counsel. The officer then placed Armstead in a police vehicle for transport to the local jail. A female walked up to the scene claiming the vehicle belonged to her. Based on her statements, the officers arrested her. Watching from the police vehicle, Armstead shouted: "It's mine, it's mine, everything in the car is mine." The officer testified Armstead "continued constantly to scream that from the back of the marked police unit."

Prior to trial, Armstead filed a written motion to suppress. At the suppression hearing, the prosecutor argued the officer had a right to search the vehicle incident to Armstead's arrest under settled law, citing among other cases, New York v. Belton, 453 U.S. 454 (1981). The prosecutor focused on the probable cause justifying Armstead's arrest. Armstead's counsel argued the arrest was pretextual and a mere ruse to search the vehicle.

> Judge, the argument is that the information he gave came back as a valid identity in Washington, D.C. and that merely we have a fishing expedition. The officer has some desire to search the vehicle and uses that pretext that initially said this or that, and "I just suspect that maybe he's not who he says he is, so I'm not going to give him a summons," kind of on a whim, the argument is he's finding any excuse to search the vehicle, and the search should be declared invalid.

The trial court denied the motion to suppress, finding the officer had probable cause to arrest Armstead. Correctly applying then-current law, the court concluded a valid arrest *ipso facto* authorized the vehicle search. "The issue really is not what happens after the arrest," the court explained, "the issue is the ability to arrest. Clearly, once the arrest is made, somebody can search the car."

At trial, Armstead testified he never shouted that everything in the vehicle belonged to him. He denied any knowledge of the cocaine and said the car belonged to the woman, his fiancée. She testified the car was hers, but said nothing about the drugs. On cross-examination, Armstead and his fiancée admitted they were convicted felons.

Sitting as factfinder, the trial court rejected Armstead's testimony and found him guilty of providing false identity information to a law enforcement officer in violation of Code § 18.2-186.3, driving on a suspended or revoked operator's license (second or subsequent offense) in violation of Code § 46.2-301, possession of cocaine with intent to distribute under Code § 18.2-248, and possession of marijuana in violation of Code § 18.2-250.1. The court entered final conviction and sentencing orders on May 1, 2009.

Armstead filed a notice of appeal and, on July 13, 2009, moved the court to authorize bail pending appeal. At the bail hearing, Armstead's counsel argued for the first time the search of the vehicle violated the rule recently adopted by <u>Arizona v. Gant</u>, 129 S. Ct. 1710 (2009). The trial court denied the request for bail pending appeal.

- 4 -

## II.

### A.  MOTION TO SUPPRESS — ARIZONA v. GANT

On appeal, Armstead argues the trial court violated the rule recently announced in

Arizona v. Gant, 129 S. Ct. 1710 (2009), when it refused to grant the motion to suppress.  He

contends we should apply Gant retroactively and doing so would necessarily require the

application of the exclusionary rule to his case.  We do not address the exclusionary rule issue[2]

because "the best and narrowest ground available" for decision, Kirby v. Commonwealth, 50

Va. App. 691, 698 n.2, 653 S.E.2d 600, 603 n.2 (2007) (citation omitted), is the first premise of

Armstead's argument — that the trial court's decision is inconsistent with Gant.[3]  We do not

believe it is.

Prior to Gant, many courts (including Virginia's appellate courts) understood New York

v. Belton, 453 U.S. 454 (1981), to permit wholly suspicionless searches of vehicles after a valid

arrest of a recent occupant.  See Glasco v. Commonwealth, 257 Va. 433, 513 S.E.2d 137 (1999);

Cason v. Commonwealth, 32 Va. App. 728, 530 S.E.2d 920 (2000); White v. Commonwealth, 24

Va. App. 446, 482 S.E.2d 876 (1997).  Gant rejected this broad view of Belton and limited

vehicular searches incident to arrest to situations where (i) an unsecured arrestee is within reach

of the passenger compartment of the vehicle, or (ii) it is "*reasonable to believe* evidence relevant

to the crime of arrest *might* be found in the vehicle."  Gant, 129 S. Ct. at 1719 (citation omitted)

---

[2] See generally United States v. Davis, 598 F.3d 1259, 1263 (11th Cir. 2010); United States v. McCane, 573 F.3d 1037, 1045 (10th Cir. 2009); State v. Riley, 225 P.3d 462, 465-66 (Wash. 2010).  Cf. Smith v. Commonwealth, 55 Va. App. 30, 51, 683 S.E.2d 316, 327 (2009) (commenting in *dicta* on the absence of any mention in Gant of the good-faith exception but failing to note that Gant affirmed the Arizona Supreme Court's application of Belton and that no litigant in Gant raised the issue of good-faith immunity).

[3] The Commonwealth contends Armstead failed to preserve the Gant issue for appeal under Rule 5A:18.  We assume without deciding the issue has been properly preserved.

(emphasis added).  In this respect, <u>Gant</u> addressed only the "circumstances unique to the vehicle context" arising out of a "search incident to a lawful arrest" of a recent occupant.  <u>Id.</u>[4]

Here, the officer testified he believed Armstead "was giving me false information" concerning his identity and the status of his driver's license.  The officer's belief was justified.  Armstead initially claimed to possess a valid Virginia license and provided verbal information including a name, birth date, and social security number — which proved to be false.  Armstead then, claiming the same identity, said he had a valid D.C. license.  That, too, proved to be inaccurate.  Throughout the encounter, Armstead insisted he had no documentation of his identity.  These circumstances established probable cause to arrest Armstead for violating Code § 18.2-186.3, which prohibits the use of false identity information to avoid summons, arrest, or prosecution, or to impede a criminal investigation.[5]

The power to arrest Armstead for providing false identity information under Code §18.2-186.3 authorized the officer to search the vehicle because it was "reasonable to believe" the vehicle "might" contain evidence of that crime, <u>Gant</u>, 129 S. Ct. at 1719 (citation omitted), specifically Armstead's true identity and his driving status.  <u>See</u> <u>State v. Gordon</u>, 821 P.2d 442, 443-44 (Or. Ct. App. 1991) ("Evidence of defendant's identity was relevant to the crime of giving false information to an officer.  Accordingly, the search of defendant's vehicle for

_____

[4] <u>Gant</u> left untouched a variety of "[o]ther established exceptions to the warrant requirement" which authorize vehicle searches "under additional circumstances when safety or evidentiary concerns demand."  <u>Gant</u>, 129 S. Ct. at 1721.  Among the most prominent *other* exceptions is the so-called automobile exception:  "If there is probable cause to believe a vehicle contains evidence of criminal activity, <u>United States v. Ross</u>, 456 U.S. 798, 820-821 (1982), authorizes a search of any area of the vehicle in which the evidence might be found."  <u>Gant</u>, 129 S. Ct. at 1721; <u>see</u> <u>also</u> <u>Wyoming v. Houghton</u>, 526 U.S. 295, 301 (1999).  This authority to search need not be incident to arrest or in any way related to a recent occupant.

[5] <u>See</u> Code § 19.2-74(A) (providing, in certain misdemeanor cases, that "the arresting officer shall take the name and address of such person" and release the person, when appropriate, only after he verifies in writing "his written promise to appear" in court at the specified time and place).

- 6 -

evidence of identification was proper as a search incident to arrest."). The belief that such information might be in the vehicle is particularly reasonable where, as in Virginia, a vehicle operator must always have with him a driver's license and vehicle registration card. See Code § 46.2-104.

Gant fully supports this reasoning by citing with approval State v. Fesler, 685 P.2d 1014, 1017 (Or. Ct. App. 1984), as an example of a case *correctly* applying the narrow view of Belton. See Gant, 129 S. Ct. at 1721 n.8. Like our case, Fesler involved a driver arrested for driving without a valid license who gave false identification information to an officer. Fesler held a search of the driver's vehicle, while the driver was locked in the back of the police cruiser, was valid because the "officer had probable cause to arrest defendant and charge him with driving while suspended and giving a false name." Fesler, 685 P.2d at 1017. The vehicle search related "to the offense for which defendant was arrested in two ways: it would further serve to identify defendant and, because defendant's knowledge he was suspended may be a pertinent consideration in such cases, it would further tend to show defendant's consciousness of guilt if the wallet had been hidden." Id.[6]

It makes no difference that the officer who arrested Armstead did not sequence his thinking in the order of these cascading legal principles. The offense establishing probable cause need not "be 'closely related' to, and based on the same conduct as," the offense identified by the officer at the time of the defendant's arrest. Devenpeck v. Alford, 543 U.S. 146, 153 (2004); see also Jordan v. Commonwealth, 207 Va. 591, 596, 151 S.E.2d 390, 394 (1966). "Subjective

---

[6] See also In re Arturo D., 38 P.3d 433, 451 (Cal. 2002) (holding that because the officer "was preparing to issue a traffic citation and therefore needed to learn the true identity of the person to be cited," it was reasonable under the Fourth Amendment to search areas within a vehicle where identifying documentation might be expected to be found); accord United States v. Colclough, 549 F.2d 937, 940 (4th Cir. 1977) (holding a vehicle search "in an effort to secure evidence of the defendants' identity" was valid).

intentions play no role in ordinary, probable-cause Fourth Amendment analysis." Whren v. United States, 517 U.S. 806, 813 (1996); see Robinson v. Commonwealth, 273 Va. 26, 37, 639 S.E.2d 217, 223 (2007) (holding an officer's "subjective motivation is irrelevant" (citation omitted)). An officer's "action is 'reasonable' under the Fourth Amendment, regardless of the individual officer's state of mind, 'as long as the circumstances, viewed *objectively*, justify [the] action.'" Brigham City v. Stuart, 547 U.S. 398, 404 (2006) (emphasis in original and citations omitted).[7]

In short, the officer had probable cause to arrest Armstead for providing false identity information in violation of Code § 18.2-186.3. It was "reasonable to believe" that Armstead's vehicle "might" contain evidence of that crime. See Gant, 129 S. Ct. at 1719 (citation omitted). During the officer's valid search for evidence of Armstead's identity, he also discovered marijuana in the open ashtray and cocaine in the center console. Under these circumstances, we hold the trial court's denial of Armstead's motion to suppress is not inconsistent with Gant.

B. SUFFICIENCY OF THE EVIDENCE

Under settled principles, we review a trial court's factfinding "with the highest degree of appellate deference." Thomas v. Commonwealth, 48 Va. App. 605, 608, 633 S.E.2d 229, 231 (2006). An appellate court does not "ask itself whether *it* believes that the evidence at the trial

---

[7] Thus, faced with a suppression motion, a court should not limit itself "to what the stopping officer says or to evidence of his subjective rationale," Raab v. Commonwealth, 50 Va. App. 577, 583 n.2, 652 S.E.2d 144, 148 n.2 (2007) (*en banc*) (citation omitted), but should look instead to what a reasonable, objective officer could have concluded from the totality of the circumstances. "Just as a subjective belief by the arresting officer would not establish probable cause where none existed, a subjective belief by the arresting officer cannot destroy probable cause where it exists." United States v. Anderson, 923 F.2d 450, 457 (6th Cir. 1991); cf. Jones v. Commonwealth, 279 Va. 665, 673, 691 S.E.2d 801, 805 (2010) (holding an "officer's subjective characterization of observed conduct is not relevant to a court's analysis concerning whether there is a reasonable suspicion because the Court's review of whether there was reasonable suspicion involves application of an objective rather than a subjective standard" (citation omitted)).

established guilt beyond a reasonable doubt." Williams v. Commonwealth, 278 Va. 190, 193, 677 S.E.2d 280, 282 (2009) (quoting Jackson v. Virginia, 443 U.S. 307, 318-19 (1979)) (emphasis in original). "Rather, the relevant question is whether '*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" Id. (citation omitted and emphasis in original).

In this case, Armstead contends no rational factfinder could conclude the evidence proved he possessed either the cocaine or the marijuana found in the vehicle. We disagree.

Constructive possession of drugs can be shown by "acts, statements, or conduct of the accused or other facts or circumstances which tend to show that the accused was aware of both the presence and character of the substance and that it was subject to his dominion and control." Haskins v. Commonwealth, 44 Va. App. 1, 6, 602 S.E.2d 402, 404 (2004) (citation omitted). As has been often said, "in drug cases no less than any other, it 'is axiomatic that any fact that can be proved by direct evidence may be proved by circumstantial evidence.'" Id. (quoting Etherton v. Doe, 268 Va. 209, 212-13, 597 S.E.2d 87, 89 (2004)). Under such circumstances, the "Court must consider the totality of the circumstances established by the evidence." Williams v. Commonwealth, 42 Va. App. 723, 735, 594 S.E.2d 305, 311 (2004) (citation omitted).

Consequently, "occupancy of a vehicle . . . where illicit drugs are found is a circumstance that may be considered" with other evidence to show constructive possession. Burchette v. Commonwealth, 15 Va. App. 432, 435, 425 S.E.2d 81, 83 (1992). "Furthermore, proof that a person is in close proximity to contraband is a relevant fact" that may also be taken into account by the factfinder. Id.; see also Dodd v. Commonwealth, 50 Va. App. 301, 308, 649 S.E.2d 222, 225 (2007). "While no single piece of evidence may be sufficient, the 'combined force of many concurrent and related circumstances, each insufficient in itself, may lead a reasonable mind

irresistibly to a conclusion.'" Harper v. Commonwealth, 49 Va. App. 517, 521-22, 642 S.E.2d 779, 781 (2007) (citation omitted).

Here, the cocaine and marijuana were found in the front passenger compartment of a vehicle occupied solely by Armstead. See, e.g., Brown v. Commonwealth, 5 Va. App. 489, 493, 364 S.E.2d 773, 775 (1988) ("[defendant] was *within arm's reach* of the cocaine" (emphasis in original)). The marijuana cigar was in plain view in an open ashtray. See Brown v. Commonwealth, 15 Va. App. 1, 9-10, 421 S.E.2d 877, 883 (1992) (*en banc*) (taking into account the open visibility of the drugs found "on the dashboard in plain view").[8] While seated in the police vehicle, Armstead emphatically shouted that everything in the vehicle belonged to him. The timing and emphasis of his shouting, a factfinder could reasonably infer, suggests Armstead was motivated by a desire (albeit both spontaneous and short-lived) to exculpate his fiancée from any inference the drugs belonged to her.

Even though Armstead denied his earlier statements to the officer that the contents found within the car belonged to him, the trial court, sitting as factfinder, was at liberty to discount Armstead's self-serving statements as little more than lying to "conceal his guilt," Coleman v. Commonwealth, 52 Va. App. 19, 25, 660 S.E.2d 687, 690 (2008) (citation omitted), and could treat such prevarications as "affirmative evidence of guilt," id. (quoting Wright v. West, 505 U.S. 277, 296 (1992)). This principle naturally follows from the broader observation that "whenever a witness testifies, his or her credibility becomes an issue." Hughes v. Commonwealth, 39 Va. App. 448, 462, 573 S.E.2d 324, 330 (2002) (citation omitted).

---

[8] See also Eckhart v. Commonwealth, 222 Va. 447, 451, 281 S.E.2d 853, 855 (1981) (taking into account that the drugs were "visible" to the defendant); Womack v. Commonwealth, 220 Va. 5, 8, 255 S.E.2d 351, 353 (1979) (finding constructive possession, in part, based upon the "visibility of the drugs"); Haskins, 44 Va. App. at 9-10, 602 S.E.2d at 406 (noting the bag of cocaine "was in plain view").

For these reasons, ample evidence supports the rationality of Armstead's convictions for possessing both the marijuana and cocaine found in the vehicle.[9]

## III.

Because the trial court did not err by denying Armstead's motion to suppress or by finding him guilty as charged, we affirm his convictions.

Affirmed and remanded.[10]

---

[9] Because Armstead does not challenge the intent-to-distribute element of the offense, we do not address the sufficiency of the evidence on this issue.

[10] The final sentencing order appears to contain a clerical error. It states the trial court convicted Armstead of distribution of cocaine. See App. 82. The indictment, arraignment, arguments at trial, and conviction order all identify the charge as possession of cocaine with intent to distribute. We remand the case to the trial court to address and, if appropriate, to remedy this apparent clerical error. See Code § 8.01-428(B).

- 11 -