COURT OF APPEALS OF VIRGINIA

Present:    Judges Beales, Ortiz and Causey
Argued at Lexington, Virginia

UNPUBLISHED

SADIQ AQUEEL ADAMS

MEMORANDUM OPINION* BY
v.        Record No. 0873-22-3              JUDGE DANIEL E. ORTIZ
JANUARY 31, 2023

COMMONWEALTH OF VIRGINIA

FROM THE CIRCUIT COURT OF THE CITY OF ROANOKE
J. Christopher Clemens, Judge

J. Thomas Love, Jr. (Office of the Public Defender, on brief), for
appellant.

John Beamer, Assistant Attorney General (Jason S. Miyares,
Attorney General; Maureen E. Mshar, Assistant Attorney General,
on brief), for appellee.

Sadiq Aqueel Adams appeals a jury conviction of two counts of assault and battery on a law

enforcement officer.  He argues that the trial court erred by giving a jury instruction that "[a]n

individual has no right to use force to resist an unlawful detention."  Because the jury instruction is

an accurate statement of law, the trial court did not abuse its discretion, and we affirm the

convictions.

BACKGROUND

On May 23, 2020, around 9:30 p.m., Adams and his extended family were leaving

Golden Park after a picnic, when they saw an elderly man attacked by three young people.

Adams and a few family members walked toward the elderly man, and the three young people

---

* Pursuant to Code § 17.1-413, this opinion is not designated for publication.

ran away. The elderly man was "bleeding from the head." Adams and his family returned to their car.

At 9:48 p.m., Sergeant Call, Officer Foster, and Officer McKee of the Roanoke City Police Department arrived at Golden Park, responding to a report of "shots fired." The officers saw "three to four vehicles" and a "gathering of people." The officers' body cameras recorded most of their interactions with the people at scene. The elderly man told Sergeant Call that some "teenagers" had tried to assault him and that a gun was involved. Officer McKee talked to a group of young people across the park, who were "cooperative," "provided their information," and consented to a search. Officer McKee did not find a weapon on them. Sergeant Call and Officer McKee walked toward Officer Foster as they heard loud noises from his direction.

Officer Foster tried to get information from Adams and his family members. Adams was initially "forthcoming" and told Officer Foster that "there was somewhat of a fight there that he had to break up." Adams and his family denied hearing any shots fired. When Officer Foster asked Adams to identify himself, he refused, became "agitated," and walked back to his family's vehicle. He was "cursing" and "very animated," insisting that he "was not involved" and did not have to tell Officer Foster anything.

While Adams and Officer Foster were arguing, Officer McKee approached the vehicle and determined that the situation was "dangerous," because it was at night, several people were in the vehicle, and the firearm "could be in the vehicle." Officer McKee told Adams to "step out of the vehicle" from the back seat because he was being detained. The officers opened the door and tried to pull Adams out of the vehicle as Adams resisted and pulled away. Officer McKee threatened Adams with pepper spray but refrained from using it after learning that young children were in the vehicle. Adams held on to the headrest in front of him as the officers continued trying to remove him from the vehicle. Suddenly, Adams lunged out of the vehicle,

punched Officer Foster in the left eye, and then punched Officer McKee in the right eye. The officers pushed Adams against the car, and then to the ground, as Adams continued to resist and scream. After fist-striking Adams several times and knee-striking him in his upper thigh, the officers managed to handcuff him with his hands behind his back.

Officer Foster's left orbital bone was fractured in four places as a result of Adams' punch. He was diagnosed with a severe concussion and nerve damage in his left temple and continued to suffer from intermittent headaches and blurry vision. Officer McKee was diagnosed with a concussion and continued to suffer from mild vision change. Adams suffered a lip laceration and a sore shoulder.

The elderly man initially attacked by the three young people "disappeared" while the officers interacted with Adams. The officers did not obtain his name.

Adams was charged with malicious wounding of a law enforcement officer. He moved to suppress "all evidence" obtained from the "unlawful stop," arguing that the officers "lacked reasonable articulable suspicion or probable cause to remove the defendant from the vehicle." The trial court denied the motion to suppress, finding that the "police did not violate defendant's constitutional rights when they stopped him on May 24, 2020." At trial, the court denied Adams' motion to strike and took his renewed motion to strike under advisement. The Commonwealth objected to the jury instruction of self-defense. Adams objected to Jury Instruction Six, which stated that "[a]n individual has no right to use force to resist an unlawful detention." The trial court denied both objections and noted that although "these two Instructions may seem juxtaposed . . . the totality of the evidence that has been elicited today called into question the Court's Ruling with respect to the detention previously on the case."

The jury convicted Adams of the lesser-included charge of assault and battery of a law enforcement officer. Adams appeals, arguing that the trial court erred in giving the jury

Instruction Six. He concedes that the issue was not properly preserved under Rule 5A:18 but argues that the "ends of justice" exception applies. *See* Rule 5A:18 ("No ruling of the trial court . . . will be considered as a basis for reversal unless an objection was stated with reasonable certainty at the time of the ruling, except for good cause shown or to enable this Court to attain the ends of justice.").

ANALYSIS

Even if Adams had properly preserved the issue at trial under Rule 5A:18, his argument that Jury Instruction Six contained an inaccurate statement of law fails on the merits. "[O]ur jurisprudence requires us to seek 'the best and narrowest ground available' for our decision." *Abdo v. Commonwealth*, 64 Va. App. 468, 473 n.1 (2015) (quoting *Armstead v. Commonwealth*, 56 Va. App. 569, 576 (2010)). "In this case, resolution of the merits constitutes the best and narrowest ground." *Id.* "Accordingly, we decline to decide whether Rule 5A:18 precludes a litigant from raising" his argument and turn to the merits of Adams' appeal. *Id.*

I. Standard of review

This Court generally reviews a trial court's decisions in giving and denying jury instructions for abuse of discretion. *Howsare v. Commonwealth*, 293 Va. 439, 443 (2017). However, "whether a jury instruction accurately states the relevant law is a question of law that we review de novo." *Watson v. Commonwealth*, 298 Va. 197, 207 (2019). "[A] jury instruction must not be submitted to the jury unless the evidence asserted in support of such an instruction amounts to more than a scintilla." *Turman v. Commonwealth*, 276 Va. 558, 564 (2008).

II. The trial court did not err in granting Jury Instruction Six because it is an accurate statement of law.

Our Supreme Court held in *Commonwealth v. Hill*, 264 Va. 541, 548 (2002), that "a person in this Commonwealth does not have the right to use force to resist an unlawful detention or 'pat down' search," as opposed to an "unlawful arrest." The Supreme Court reasoned that the

- 4 -

prolonged and complete restraint on liberty, as well as the indelible record, that may result from an arrest distinguish it from a "a protective search for weapons or other investigative detention." *Id.* at 547. Jury Instruction Six accurately recites the Supreme Court's holding in *Hill*.[1] In addition, there was more than a "scintilla" of evidence that Adams used force to resist an unlawful detention by punching the two officers, fracturing Officer Foster's orbital bone in four places. Therefore, the trial court did not abuse its discretion in giving Jury Instruction Six.

Adams advocates for a "change in the law" in response to "systemic abuses in police practices." Given the Supreme Court's holding in *Hill*, this Court is powerless to consider the argument, as "[w]e are bound by decisions of the Supreme Court of Virginia and are without authority to overrule them." *Tart v. Commonwealth*, 17 Va. App. 384, 392 (1993). We cannot conclude that the trial court erred in adhering to the Supreme Court's decision in *Hill*.

Adams further seeks to distinguish the detention of witnesses from the detention of criminal suspects. This argument pertains to whether the detention was unlawful, not to whether Adams had the right to use force to resist an unlawful detention. Thus, it is irrelevant to the assignment of error.

## CONCLUSION

Because the trial court did not err in giving Jury Instruction Six, we affirm the convictions.

*Affirmed.*

---

[1] Jury Instruction Six states, "An individual has no right to use force to resist an unlawful detention."