UNPUBLISHED

COURT OF APPEALS OF VIRGINIA

Present:  Chief Judge Decker, Judges Beales and Raphael
Argued at Norfolk, Virginia

TYSHAWN JOSEPH DESHIELDS

v.      Record No. 1383-22-1

COMMONWEALTH OF VIRGINIA

MEMORANDUM OPINION* BY
JUDGE RANDOLPH A. BEALES
FEBRUARY 20, 2024

FROM THE CIRCUIT COURT OF THE CITY OF HAMPTON
Bonnie L. Jones, Judge

Charles E. Haden for appellant.

David A. Mick, Assistant Attorney General (Jason S. Miyares,
Attorney General; Leanna C. Minix, Assistant Attorney General, on
brief), for appellee.

Following a jury trial, Tyshawn Joseph Deshields was convicted of second-degree murder,

use of a firearm in the commission of a felony, and discharging a firearm in an occupied building.

On appeal to this Court, Deshields challenges the sufficiency of the evidence supporting his

convictions.

I.  BACKGROUND

"In accordance with familiar principles of appellate review, the facts will be stated in the

light most favorable to the Commonwealth, [as] the prevailing party at trial." *Gerald v.

Commonwealth*, 295 Va. 469, 472 (2018) (quoting *Scott v. Commonwealth*, 292 Va. 380, 381

(2016)).  "This principle requires us to 'discard the evidence of the accused in conflict with that of

the Commonwealth, and regard as true all the credible evidence favorable to the Commonwealth

---

* This opinion is not designated for publication.  *See* Code § 17.1-413(A).

and all fair inferences to be drawn therefrom.'" *Kelley v. Commonwealth*, 289 Va. 463, 467-68 (2015) (quoting *Parks v. Commonwealth*, 221 Va. 492, 498 (1980)).

At trial, Lauren Martinez testified that in February 2020 she broke up with her boyfriend, Michael Davis. About ten to fourteen days after the break-up, Martinez began seeing Deshields. On February 20, 2020, Deshields and Martinez went to the mall together to fix Martinez's cell phone. Martinez testified that Deshields ended up buying her a new cell phone and that Deshields "said he didn't want Mikey [Davis] to have my number."

Deshields then went over to Martinez's apartment later that night. Deshields testified that he and Martinez were in bed together in Martinez's upstairs bedroom when they heard a noise coming from downstairs. Martinez testified that she told Deshields "that that is Mikey [Davis] coming in, can you get your stuff and go." Davis then entered the bedroom. Martinez stated that Davis approached her and that he repeatedly asked Martinez, "Are you for real?" When responding to a question from the attorney for the Commonwealth, Martinez acknowledged that Davis did not attack her or Deshields during the encounter.

While Davis continued to question her, Martinez stated that she suddenly heard a gunshot. She saw that Davis had been shot in the chest. Martinez testified, "I looked to my left. Tyshawn [Deshields] has a gun his hand. He did not let that gun go." Davis then "darted out the room to go down the stairs," and Deshields then followed Davis out of the bedroom. Martinez stated that she heard more gunshots after both men left her bedroom. Deshields came back into the room to collect his belongings, and then he left with the firearm. Martinez stated, "He [Deshields] still had the gun in his hand. He was not going to let that gun go."

Martinez called 911 from her bedroom. The police soon arrived at Martinez's apartment, and they found Davis's deceased body in a pool of blood at the bottom of the stairs. City of Hampton Police Detective Steven Rodey testified that he found a used shell casing from a

firearm near Davis's body at the bottom of the stairs, and he found a second used shell casing in Martinez's bedroom. He also saw an unfired 9-millimeter cartridge in the hallway between Martinez's upstairs bedroom and the stairs. Detective Rodey explained that the unused shell casing had "some deformity on the brass casing itself" which indicated that the firearm had jammed. He went on to state that "to fire a second round you will have to take the slide, pull it back, eject that round if it didn't eject." Detective Rodey then testified that he found a bullet hole near Martinez's bedroom window. He was able to follow the path of the trajectory of the bullet, and he later discovered that the bullet hit a nearby apartment. Detective Rodey stated that the police did not find a firearm at the scene.

Dr. Wendy Gunther conducted the autopsy of Davis's body, and she testified that Davis was shot twice – once in the back and once in the chest. Dr. Gunther stated that the bullet entering his chest pierced his heart and lung. She also testified that "this was definitely not a hard contact gunshot wound," meaning that the gun was not pressed into Davis's body when it was fired.

At trial, Martinez testified that she spoke with the police on the same night of the murder. Martinez initially told the officers that she did not know what happened, and she did not disclose Deshields's identity to the police. As the investigation progressed, Martinez later told the police that she was in bed with Davis when Deshields broke into her home to kill Davis. At trial, Martinez acknowledged that she actually lied to the police when she spoke with them after the murder. She also acknowledged that she is a convicted felon. However, Martinez told the jury that it was wrong of her to lie to the police. Martinez went on to explain that she told the truth in her testimony at trial because Davis "shouldn't have got shot over nothing."

Deshields testified in his own defense. Deshields stated that he knew Davis from work. He testified that Davis burst into Martinez's bedroom and that Davis looked at Martinez and

said, "You're a dumb bitch." Deshields testified that he asked Davis to leave, but Davis "pulled out a gun." Deshields testified that Davis "dropped the gun" and "[a]s soon as he dropped the gun I [Deshields] went for it." Deshields went on to state, "He's [Davis] trying to take the gun from me. We are in a little scuffle, like a wrestling match. The gun ends up going off and I'm [Deshields] trying to usher him out the room. I'm trying to push him down the steps, the gun went off." Deshields testified that he placed the gun on a table outside Martinez's bedroom door and then left the apartment.

At the conclusion of the evidence, the jury convicted Deshields of second-degree murder, discharging a firearm in an occupied building, and use of a firearm in the commission of a felony. Deshields now appeals.

## II. ANALYSIS

Deshields challenges the sufficiency of the evidence of all of his convictions on appeal. For his second-degree murder conviction, Deshields specifically argues that he "never planned with malice aforethought the murder of Michael Davis." Deshields then argues that he "acted in excusable self-defense" and that "even if Deshields' actions didn't rise to the level of excusable self-defense, the killing constituted a voluntary manslaughter, an intentional killing done in the heat of passion upon sudden provocation." Deshields also challenges the credibility of Martinez's testimony.

"When reviewing the sufficiency of the evidence, '[t]he judgment of the trial court is presumed correct and will not be disturbed unless it is plainly wrong or without evidence to support it.'" *Secret v. Commonwealth*, 296 Va. 204, 228 (2018) (alteration in original) (quoting *Pijor v. Commonwealth*, 294 Va. 502, 512 (2017)). "In such cases, '[t]he Court does not ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt.'" *Id.* (alteration in original) (quoting *Pijor*, 294 Va. at 512). "Rather, the relevant question is whether '*any* rational

trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *Williams v. Commonwealth*, 278 Va. 190, 193 (2009) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). "We are bound by the trial court's factual findings unless those findings are plainly wrong or unsupported by the evidence." *Malbrough v. Commonwealth*, 275 Va. 163, 168 (2008).

This Court has previously stated, "Whether malice existed is a question for the fact finder." *Robertson v. Commonwealth*, 31 Va. App. 814, 823 (2000). The Supreme Court has defined malice as "the doing of a wrongful act intentionally, or without just cause or excuse, or as a result of ill will." *Watson-Scott v. Commonwealth*, 298 Va. 251, 255-56 (2019) (quoting *Dawkins v. Commonwealth*, 186 Va. 55, 61 (1947)). Furthermore, it is well-established that "malice may be implied from the deliberate use of a deadly weapon." *Id.* at 256 (quoting *Smith v. Commonwealth*, 239 Va. 243, 264 (1990)). The Supreme Court has also stated, "Malice and heat of passion are mutually exclusive; malice excludes passion, and passion presupposes the absence of malice." *Barrett v. Commonwealth*, 231 Va. 102, 106 (1986).

"Self-defense is an affirmative defense to a charge of murder, and in making such a plea, a 'defendant implicitly admits the killing was intentional and assumes the burden of introducing evidence of justification or excuse that raises a reasonable doubt in the minds of the jurors.'" *Commonwealth v. Sands*, 262 Va. 724, 729 (2001) (quoting *McGhee v. Commonwealth*, 219 Va. 560, 562 (1978)). "Whether an accused proves circumstances sufficient to create a reasonable doubt that he acted in self-defense is a question of fact." *Smith v. Commonwealth*, 17 Va. App. 68, 71 (1993).

Here, the jury could certainly credit Martinez's testimony and, therefore, implicitly find that Deshields was lying to conceal his guilt. *See Armstead v. Commonwealth*, 56 Va. App. 569, 581 (2010) ("[T]he trial court, sitting as factfinder, was at liberty to discount [the defendant's] self-serving statements as little more than lying to 'conceal his guilt.'"). While Martinez

admitted that she had initially lied to the police, Martinez explained to the jury that she was honest in her testimony at trial. This Court has previously held that "the mere fact that a witness' testimony may have been impeached does not necessarily render the testimony inherently incredible." *Ray v. Commonwealth*, 74 Va. App. 291, 306 (2022). Furthermore, the evidence presented at trial corroborated Martinez's testimony over Deshields's self-serving statements. For instance, Martinez testified that Davis did not attack her or Deshields that evening, which aligns with Dr. Gunther's testimony that "this was definitely not a hard contact gunshot wound" (as Deshields had suggested in his testimony). Likewise, although Deshields testified that he left the firearm on Martinez's table, the police did not find a firearm in Martinez's home, and Martinez testified that Deshields "still had the gun in his hand" when he left.

Martinez's testimony and the other evidence presented at trial showed that Deshields killed Davis with malice (and not in self-defense). Deshields shot Davis in the chest even though Davis had not physically attacked Deshields or Martinez, and, most importantly, Deshields then followed Davis out of Martinez's bedroom to shoot him again in the back as Davis tried to retreat down the hallway and then down the stairs. Martinez testified that she heard a gunshot while Davis was speaking to her, and she then saw that "Tyshawn [Deshields] has a gun." As Davis started to flee out of the bedroom down the hall and then down the stairs, Deshields shot Davis again in the back as Davis fled down the steps – which certainly was not done in self-defense. In fact, an unfired bullet was found on the floor in the hallway that indicated, according to Detective Rodey, that Deshields had even had "to take the slide [of the firearm], pull it back, [and] eject" that jammed bullet before he could fire his gun again at Davis's back.

Given that Deshields followed Davis out of the bedroom after shooting him in the chest and given that Deshields then took the time to unjam his firearm before shooting Davis yet again (and this time in the back), Deshields did not act in self-defense. *See Bell v. Commonwealth*, 66

- 6 -

Va. App. 479, 487 (2016) (holding that a defendant must retreat as far as possible and announce his desire for peace in a plea of excusable self-defense). Consequently, we cannot say that the jury was plainly wrong or without evidence to support its finding of guilt when it rejected Deshields's self-defense argument. The jury could also reasonably conclude that Deshields acted with malice when he shot Davis in the chest and then again in the back. Therefore, given the testimony of Martinez and the evidence found at Martinez's apartment, we cannot say that no rational factfinder could have found the evidence sufficient for Deshields's convictions for second-degree murder and for use of a firearm in the commission of a felony. In addition, because Deshields shot his firearm inside Martinez's apartment (with Martinez present) and one of the bullets from Deshields's firearm hit a neighboring apartment, we also cannot say that no rational factfinder could have found the evidence sufficient for Deshields's conviction for discharging a firearm in an occupied building.

III. CONCLUSION

For all of these reasons, we affirm the trial court's judgment and uphold each of Deshields's convictions.

*Affirmed.*