COURT OF APPEALS OF VIRGINIA

**PUBLISHED**

Present:   Judges Humphreys, Petty and Decker
Argued at Richmond, Virginia


ANDREW BECKER, S/K/A
 ANDREW IRA BECKER

                                                                OPINION BY
v.        Record No. 1611-13-4                    JUDGE WILLIAM G. PETTY
                                                                MARCH 24, 2015
COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF FAIRFAX COUNTY
Randy I. Bellows, Judge

Robert L. Lichtenstein for appellant.

Elizabeth C. Kiernan, Assistant Attorney General (Mark R. Herring,
Attorney General, on brief), for appellee.


Andrew Becker, a Virginia Beach attorney, was convicted by the Fairfax County Circuit

Court, sitting without a jury, of criminal contempt for misbehavior as an officer of the court, in

violation of Code § 18.2-456(4).[1]  On appeal, Becker assigns two errors to the trial court's

judgment.  First, Becker argues the trial court erred in finding evidence beyond a reasonable doubt

that he intentionally and willfully misbehaved as an officer of the court in his official character.

Second, Becker argues the trial court erred by accepting into evidence the certification and

transcripts from the general district court because they "included impermissible reference to

[Becker's] prior disciplinary record, as well as, irrelevant opinion" of the general district court

---

[1] Code § 18.2-456 lists the behavior for which a court may summarily punish for
contempt.  Although the court described Becker's behavior by reference to the statute, it was not
required to do so because the court's power to punish contempt is inherent in the court itself.
See Fisher v. Salute, 51 Va. App. 293, 302, 657 S.E.2d 169, 173 (2008) ("The power to punish
for contempt is inherent in, and as ancient as, courts themselves.").  Here, Becker does not
contend that he was punished summarily or that the court's use of the statute to describe his
behavior was in error.

judge; additionally, Becker argues that this error was not harmless. We disagree and affirm Becker's conviction.

## I. BACKGROUND

"On appeal, 'we review the evidence in the light most favorable to the Commonwealth, granting to it all reasonable inferences fairly deducible therefrom.'" Archer v. Commonwealth, 26 Va. App. 1, 11, 492 S.E.2d 826, 831 (1997) (quoting Martin v. Commonwealth, 4 Va. App. 438, 443, 358 S.E.2d 415, 418 (1987)). "Furthermore, an appellate court's 'examination is not limited to the evidence mentioned by a party in trial argument or by the trial court in its ruling.' Rather, 'an appellate court must consider all the evidence admitted at trial that is contained in the record.'" Perry v. Commonwealth, 280 Va. 572, 580, 701 S.E.2d 431, 436 (2010) (quoting Bolden v. Commonwealth, 275 Va. 144, 147, 654 S.E.2d 584, 586 (2008)). The following evidence is set out with these principles in mind.

Becker was retained by a judgment creditor to collect money owed by a judgment debtor. On November 8, 2012, Becker, through his legal assistant, mailed to the Fairfax County General District Court a "Suggestion for Summons in Garnishment" and a "Garnishment Summons." Becker used the district court's forms DC-450 and DC-451. The garnishment summons listed a return date,[2] a case number, and the name and address of the garnishee, who was the debtor's employer. Becker filled in "Irvine, Texas" as the address for the garnishee/employer. Becker

---

[2] A return date is "[a] day on which a defendant [or in this case the garnishee] must appear in court . . . [or] file an answer." Black's Law Dictionary 454 (9th ed. 2009). Code § 8.01-514 provides: "The summons in garnishment . . . shall be made returnable to the court that issued it within 90 days from the writ's issuance, except that, in the case of a wage garnishment, the summons shall be returnable not more than 180 days after such issuance." Thus, the return date represents the *end* of the garnishment period and compels the garnishee to appear in court or file an answer prior to the return date.

included a prepaid certified envelope addressed to the garnishee/employer in Irvine Texas, "Attn: Payroll," with the documents sent to the district court.

That same day, and before he mailed the garnishment documents to the district court, Becker also sent a facsimile of the garnishment summons, form DC-451, to Automatic Data Processing, Inc. ("ADP"). ADP served as the payroll administrator for the garnishee/employer.[3] As a result, ADP received the facsimile garnishment summons before the garnishment documents had even been mailed to the district court. The cover letter to the facsimile stated, "Attached is a complimentary copy of the Garnishment Summons for: [debtor's information] Thanks in advance for your assistance with this matter." The garnishment summons included the case number and return date that Becker had filled in on the district court form. The summons did not include either a judge's signature or a clerk's signature, nor did it include a date of issuance. Nevertheless, relying on the "complimentary copy" of the garnishment summons, ADP began withholding the debtor's wages.

About two weeks after Becker sent the garnishment packet to the district court, the district court returned it unfiled. The clerk's cover letter noted that the documents were being returned because the garnishee had an out-of-state headquarters. Becker testified that he subsequently "determined that there was a Virginia location," by which he apparently meant a registered agent, but he did not re-file the garnishment with the correct address.

---

[3] We note that although the circuit court and Becker appear to use the term "employer" to refer to ADP, ADP was not the employer and therefore was not the garnishee. ADP does not appear on the garnishment summons, only the employer does. Becker testified that when the district court informed him that checks had been sent to the court for a case that had never been filed, he contacted the employer, who directed him to ADP. Becker then stated, "I must assume that's the same reason this went to ADP because the employer sometimes says it has to go to a specific group." Nothing in Becker's testimony, however, indicates that he had the authority to contact ADP on November 8, 2012, on behalf of the employer or to request action by ADP in regard to the garnishment.

Becker failed to notify ADP that the garnishment summons was rejected by the district court. Consequently, four times between November 12, 2012 and January 25, 2013 the employer filed a Garnishee's Answer form, using the case number and return date supplied by Becker. These documents indicated that a total of $1278.01 was withheld from the debtor's wages. Checks totaling that amount were made payable to Becker's client and sent to the district court.

On January 30, 2013, after receiving the checks, the district court issued an order requiring the garnishee to stop withholding funds of the judgment debtor and noting that no garnishment was pending or had been filed. Additionally, the court returned the checks to the employer.

Also on January 30, 2013, the district court issued a Show Cause Summons (Criminal) to Becker for "[f]orwarding the attached garnishment summons, not issued by this court, to the Defendant's employer, resulting in funds being held without authority of law." The date set for the show cause hearing was March 7, 2013. When Becker failed to appear on that date, the district court issued a capias, which was later withdrawn, and rescheduled the hearing for April 11, 2013.

At the April 11, 2013 hearing, documents related to the garnishment summons and suggestion were admitted into evidence, and Becker testified. Becker stated that he had not intended to mislead ADP by use of the "complimentary copy" of the summons. The district court, nonetheless, found Becker guilty of criminal contempt.

Becker appealed the conviction to the Fairfax County Circuit Court. Becker did not contest the admission of "the underlying documentation" presented in district court, but argued the certification of the district court's order and the district court transcripts were inadmissible

because the contempt, if any, was indirect rather than direct.[4]  Becker was concerned that the

district court's certification contained the judge's personal opinion, which was irrelevant to the

issue of indirect contempt because the conduct for which he was charged did not happen in the

presence of the court.  Likewise, Becker argued the transcripts that were incorporated into the

district court's certification contained opinion commingled with the facts and included references

to Becker's prior disciplinary record.  Nevertheless, Becker conceded that the transcripts should

be admitted as evidence, albeit with "a big yellow caution light with respect to the court being

able to parse out what are facts and what are opinions."

The court ruled that the certification and the incorporated transcripts were properly

admissible because they contained Becker's explanation of his actions.  Nevertheless, the court

stressed that it would "make an independent assessment as to whether [Becker's] conduct was

contemptible" and would "not consider[] [Becker's] prior disciplinary record."  After hearing

testimony from Becker, the circuit court found beyond a reasonable doubt that Becker was guilty

of contempt.  The court specifically noted that its decision rested on the "absolutely misleading"

nature of the "complimentary summons."  Further, the court emphasized, "Let me be clear, I

have read [the district court judge's] statement.  Even absent that statement I would reach the

same conclusion.  I want to be absolutely clear that this is an independent judgment I'm making

based on my assessment of the document."  Becker now appeals his conviction to this Court.

---

[4] "A contempt of court may be direct or indirect.  Generally, a direct contempt is one committed in the presence of the court.  An indirect or constructive contempt is one that has occurred outside the presence of the court."  Gilman v. Commonwealth, 275 Va. 222, 227, 657 S.E.2d 474, 476 (2008) (citations omitted).  "Unless the contempt is 'committed in open court,' due process 'requires that the accused should be advised of the charges and have a reasonable opportunity to meet them by way of defense or explanation.'"  Scialdone v. Commonwealth, 279 Va. 422, 444, 689 S.E.2d 716, 728 (2010) (quoting Cooke v. United States, 267 U.S. 517, 537 (1925)).  It is uncontested that the conduct for which Becker was held in contempt occurred outside the presence of the court and was thereby indirect contempt.  Becker received a hearing, at which he presented evidence and was represented by counsel.  He does not argue that his due process rights were violated.

- 5 -

II.  ANALYSIS

A.  The Evidence Was Sufficient to Show Intent

In his first assignment of error, Becker argues the evidence was not sufficient to find him guilty beyond a reasonable doubt of criminal contempt because he did not intentionally and willfully misbehave as an officer of the court.  We disagree.

"On review of an insufficiency claim, 'this Court does not substitute its judgment for that of the trier of fact.'"  Robinson v. Commonwealth, 41 Va. App. 137, 142, 583 S.E.2d 60, 62 (2003) (quoting Jett v. Commonwealth, 29 Va. App. 190, 194, 510 S.E.2d 747, 748 (1999) (en banc)).  "'Where the court's authority to punish for contempt is exercised by a judgment rendered, its finding is presumed correct and will not be reversed unless plainly wrong or without evidence to support it.'"  Id. (quoting Brown v. Commonwealth, 26 Va. App. 758, 762, 497 S.E.2d 147, 149 (1998)).

"'Contempt is defined as an act in disrespect of the court *or its processes*, or which obstructs the administration of justice, or tends to bring the court into disrepute.'"  Id. at 142-43, 583 S.E.2d at 63 (emphasis added) (quoting Carter v. Commonwealth, 2 Va. App. 392, 396, 345 S.E.2d 5, 7 (1986)).  "'Contempt is, itself, a frame of mind' that consists in 'an unwillingness to recognize the authority and dignity of the court.'"  Abdo v. Commonwealth, __ Va. App.__, __, __ S.E.2d __, __ (Mar. 24, 2015) (quoting John L. Costello, Virginia Criminal Law and Procedure § 26.4[1] (4th ed. 2014)).

"All courts in this Commonwealth have the power to impose penalties for contemptuous conduct.  A court's authority to punish contemptuous conduct is exercised to preserve the power of the court and to vindicate the court's dignity."  Gilman v. Commonwealth, 275 Va. 222, 227, 657 S.E.2d 474, 476 (2008) (citations omitted).  "[I]n criminal contempt proceedings, it is

- 6 -

essential to consider whether the accused intended to undermine this authority." <u>Singleton v. Commonwealth</u>, 278 Va. 542, 550, 685 S.E.2d 668, 672 (2009).

"[W]hether the required intent exists is generally a question of fact for the trier of fact." <u>Nobles v. Commonwealth</u>, 218 Va. 548, 551, 238 S.E.2d 808, 810 (1977). "'Intent in fact is the purpose formed in a person's mind and may be, and frequently is, shown by circumstances.'" <u>Abdo</u>, __ Va. App. at __, __ S.E.2d at __ (quoting <u>Vincent v. Commonwealth</u>, 276 Va. 648, 652, 668 S.E.2d 137, 140 (2008)). "Intent may be shown by the circumstances, including a person's conduct and statements." <u>Robertson v. Commonwealth</u>, 31 Va. App. 814, 820, 525 S.E.2d 640, 643 (2000). Moreover, "'[c]ircumstantial evidence is as acceptable to prove guilt as direct evidence, and in some cases, such as proof of intent or knowledge, it is practically the *only* method of proof.'" <u>Abdo</u>, __ Va. App. at __, __ S.E.2d at __ (quoting <u>Parks v. Commonwealth</u>, 221 Va. 492, 498, 270 S.E.2d 755, 759 (1980)). "Under Virginia precedent, willfulness or recklessness satisfies the intent element necessary for a finding of criminal contempt." <u>Id.</u> at __, __ S.E.2d at __. Finally, "[t]he fact finder may infer that a person intends the immediate, direct, and necessary consequences of his voluntary acts." <u>Robertson</u>, 31 Va. App. at 820, 525 S.E.2d at 643.

### 1. *Sending of a Misleading Summons Form*

Sitting as fact-finder, the circuit court had ample evidence from which to find that Becker intentionally misbehaved as an officer of the court. The circuit court found the unissued garnishment summons form sent by Becker to ADP to be "absolutely misleading." Although Becker initially testified that both the garnishment summons itself and the cover letter were stamped "complimentary," he later admitted that the garnishment summons sent to ADP bore no such stamp. The circuit court found that the term "complimentary" in the cover letter did nothing to convey to the recipient that the document did not have the force of law. Specifically,

the cover letter stated, "Thanks in advance for your assistance with this matter" and included no words of disclaimer as to the effectiveness of the attached garnishment summons.

The circuit court reasoned that the garnishment summons was "extraordinarily misleading" and "[the court] d[i]dn't know how it could have been interpreted by an employer other than as a command." The circuit court concluded that the garnishment summons "usurp[ed] the authority of the court in that it advise[d] ADP of a return date and accompanie[d] it with a summons." The court further noted "that while someone skilled in the law would understand that it wasn't an official court document, certainly someone unskilled—a layperson would in my view not understand that, especially given the cover letter." Thus, the circuit court could infer that Becker intended the direct consequence—namely, the unlawful withholding of the debtor's wages—when he intentionally sent the "absolutely misleading" facsimile to ADP.[5]

### 2. *Unauthorized Start of the Garnishment Process*

Becker testified his intention was not to mislead or to deceive ADP, but he admits he intended ADP to place garnishment information into ADP's system as a result of receiving the "complimentary copy" of the summons. Becker testified that he hoped to "get the ball rolling in terms of processing it within their internal system" because "by the time the garnishee is served with the garnishment there may not be sufficient time to act on it prior to the return date." Setting up the logistics of the garnishment is part of the garnishment process. Thus, Becker

---

[5] Moreover, we note that the distribution of an "absolutely misleading" "complimentary copy" of the garnishment summons was likely a violation of the federal Fair Debt Collection Practices Act (FDCPA), which forbids "[t]he use or distribution of any written communication *which simulates or is falsely represented to be a document authorized, issued, or approved by any court*, official, or agency of the United States or any State, or *which creates a false impression* as to its source, authorization, or approval." 15 U.S.C. § 1692e(9) (emphasis added). Becker was aware that his "complimentary copy" had already created a false impression as to its authority in the mind of at least one other employer. Based on Becker's testimony that the majority of his practice is debt collection, the circuit court could infer that he was aware of prohibited conduct under the FDCPA. It could conclude that continuing to send documents that create a false impression in violation of the FDCPA was willful and intentional misconduct.

- 8 -

admits that he intended ADP to begin the garnishment process, in reliance on the document, before a garnishment was issued by the general district court. This usurped the district court's authority to determine when the garnishment process would lawfully begin.

Further, Becker admitted that he faxed the court form to ADP on the same day that he *mailed* the garnishment packet to the district court. He therefore knew with certainty that ADP would receive the "complimentary copy" before the district court had issued the summons. Therefore, the circuit court could have inferred that Becker's intent in sending the "complimentary copy" to ADP was to improperly induce the company to withhold funds from the debtor before it was legally entitled to do so. Becker sought a short cut to expedite the garnishment process, under color of the court's authority, by sending ADP a copy of the court's garnishment summons form. The court was within its power to vindicate its dignity by finding this was misbehavior by an officer of the court.

The circuit court could also infer from the facts that Becker intended to deceive ADP because he knew that a "complimentary copy" of the summons had been misinterpreted before. Becker admitted that when he previously sent the "complimentary copy" to an employer, the employer "contacted [him] to say we have this garnishment, what do we do[?]" The circuit court reasoned that "the fact that [Becker] had a prior experience where this had happened" was a "warning that people are misinterpreting this." But Becker sent the misleading document nonetheless.

Becker testified that he was notified by the district court "about two weeks" after mailing the garnishment documents to the district court that the court had rejected the garnishment. Yet Becker did not inform ADP that the garnishment had been rejected. Three of the four checks representing funds withheld from the debtor were mailed to the district court by ADP in January 2013, roughly *two months* after Becker learned the garnishment had been rejected. The court

- 9 -

could have inferred from these facts that Becker misbehaved as an officer of the court by failing to contact ADP when he knew the garnishment summons was rejected.

### 3. Good Faith Argument Is Unavailing

Becker points to the Supreme Court's opinion in Wells v. Commonwealth, 62 Va. (21 Gratt.) 500, 509 (1871), for the proposition that where an "attorney has acted in good faith, although he may have erred in judgment, he is not liable." Becker argues that he was acting in good faith "in the best interest of his client [by] simultaneously, but erroneously, forward[ing]" the garnishment summons. Becker further argues that his "err[or] in allowing his office to forward the complimentary letter and Garnishment Summons was unfortunate, but nothing more than a mistake because he believed that the Garnishment package would be filed and the Garnishment Summons Order forwarded by the Court."

Becker is likely correct that if the garnishment documents had been filed by the district court as planned, his actions inducing ADP to withhold wages before it was lawful to do so would have gone unnoticed. Nevertheless, attempting to have ADP start the garnishment process before the district court issued the order cannot constitute good faith when it advanced the client's interests at the expense of the authority and dignity of the court. Additionally, the circuit court could find transmission of the garnishment summons as more than "an error in judgment" based on the "absolutely misleading" nature of the document and the fact that a similar document had been misunderstood before. Moreover, based on Becker's testimony, his actions were not an isolated error in judgment, but rather the common practice of his office.

The circuit court had additional evidence upon which to reject Becker's "good faith" defense. Becker testified that he had been practicing law since 1989 and the "majority of [his] practice is collections in nature." The court therefore could infer that Becker was familiar with the requirements of debt collection and that violations of those requirements were intentional.

The circuit court could thus infer from the evidence that Becker should have known, based on his experience in debt collection, that the garnishment summons, directed to an out-of-state employer, would be rejected by the district court. Becker attempted to "serve" the employer, which was a corporation, by having the district court clerk send the summons to the employer's payroll department. Process, however, must be served on an *individual* through direct or substituted service. See Code §§ 8.01-296, 8.01-511 (making Code § 8.01-296 applicable to service of the garnishment order upon the garnishee). Where the employer is a corporation, as here, Code § 8.01-513 requires that

> the [garnishment] summons shall be served upon an officer, an employee designated by the corporation . . . [or] a managing employee of the corporation . . . . [If] no such officer or employee or other person authorized to accept such service can be found within the Commonwealth . . . then such summons shall be served on the registered agent of the corporation or upon the clerk of the State Corporation Commission . . . .

Here, if Becker could find no designated officer or employee within the Commonwealth, then he was required either to serve a registered agent of the employer or to serve the clerk of the State Corporation Commission pursuant to Code § 12.1-19.1. Mailing the order to the "payroll department" of the employer in another state was an impermissible method of service, and Becker cannot claim that he in good faith expected to serve the employer in this way.

In summary, the trial court "was at liberty to discount [Becker's] self-serving statements as little more than lying to conceal his guilt." Armstead v. Commonwealth, 56 Va. App. 569, 581, 695 S.E.2d 561, 567 (2010) (internal quotation marks omitted). The evidence supported the circuit court's conclusion that Becker intentionally used the district court's own form to mislead ADP so that ADP would unlawfully withhold wages from the judgment debtor. Further, evidence that the use of the form was a consistent practice and Becker's argument that his only mistake was in believing the documents would be filed show "'an unwillingness to recognize the

- 11 -

authority and dignity of the court.'" Abdo, __ Va. App. at __, __ S.E.2d at __ (quoting

Costello, supra, at § 26.4[1])). Becker's actions impugned the dignity of the court, and the court

was within its authority to find Becker in contempt.

### B. Admission of Certification and Transcripts, if Error, Was Harmless

In his second assignment of error, Becker argues that the circuit erred by accepting into

evidence the certification and transcript from the district court because they contained

impermissible references to Becker's prior disciplinary record and irrelevant opinion. Assuming

without deciding that Becker properly preserved this argument[6] and assuming without deciding

that the certification and/or transcripts should *not* have been admitted,[7] we find that the error was

harmless.

Absent an error of constitutional magnitude, "no judgment shall be arrested or reversed"

when "it plainly appears from the record and the evidence given at the trial that the parties have

had a fair trial on the merits and substantial justice has been reached." Code § 8.01-678. "'A

defendant is entitled to a fair trial but not a perfect one,' for there are no perfect trials." Brown v.

United States, 411 U.S. 223, 231-32 (1973) (quoting Bruton v. United States, 391 U.S. 123, 135

(1968)). "'If, when all is said and done, the conviction is sure that the error did not influence the

[fact finder], or had but slight effect, the verdict and the judgment should stand[.]'" Rose v.

---

[6] Becker's counsel conceded, "I think [the transcripts incorporated into the district court's certification] come in with, as I said, a big yellow caution light with respect to the [c]ourt being able to parse out what are facts and what are opinions." Becker's counsel also expressed concern that Becker's prior disciplinary record was relied upon by the district court and was "an exhibit now." The circuit court emphasized that he was "not considering [Becker's] prior disciplinary record" and "basing it on the conduct in front of" the court. Becker's counsel responded, "Yes, sir. And I'm very confident of that but I would be very remiss if I didn't call that to the [c]ourt's attention." We will assume without deciding that this was sufficient to preserve the argument.

[7] Accordingly, we do not decide today if Gilman v. Commonwealth, 275 Va. 222, 657 S.E.2d 474 (2008), applies to indirect contempt and do not decide if Code § 18.2-459 governing summary contempt applies in cases of indirect contempt.

Commonwealth, 270 Va. 3, 12, 613 S.E.2d 454, 458 (2005) (quoting Clay v. Commonwealth, 262 Va. 253, 260, 546 S.E.2d 728, 731 (2001)). Therefore, in determining whether an error is harmless, "we must review the record and the evidence and evaluate the effect the error may have had on how the finder of fact resolved the contested issues." Lavinder v. Commonwealth, 12 Va. App. 1003, 1007, 407 S.E.2d 910, 912 (1991) (en banc).

Prior to admission of the certification, the circuit court addressed the concern that the certification, and the transcripts incorporated therein, might contain inadmissible opinions by the district court and inadmissible references to Becker's prior disciplinary record. The circuit court made clear that its role was not to review the decision made by the district court, but rather to makes "its own assessment of whether the conduct [was] contemptible." It emphasized that it would "make an independent assessment as to whether the conduct [was] contemptible." Further, the circuit court confirmed that it was "not considering [Becker's] prior disciplinary record." In its final ruling, the circuit court stated, "Let me be clear, I have read [the district court's] statement. Even absent that statement I would reach the same conclusion. I want to be absolutely clear that this is an independent judgment I'm making based on my assessment of the document."

"A judge, unlike a juror, is uniquely suited by training, experience, and judicial discipline to disregard potentially prejudicial comments and to separate, during the mental process of adjudication, the admissible from the inadmissible, even though he has heard both." Eckhart v. Commonwealth, 222 Va. 213, 216, 279 S.E.2d 155, 157 (1981). Here, the circuit court judge showed that he was well aware of the potentially prejudicial and inadmissible evidence in the transcript and certification. The judge specifically acknowledged his resolve to render an independent ruling based only on the permissible evidence. We have no reason to doubt that the judge did so.

- 13 -

Thus, in this case, the record is clear that any irrelevant or inadmissible evidence contained in the district court's certification and the incorporated transcripts did not affect the circuit court's resolution of the contested issues. Any error was therefore harmless.

### III. CONCLUSION

There was ample evidence upon which the circuit court could find Becker guilty of contempt. The circuit court did not err in finding that Becker intentionally "act[ed] in disrespect of the court or its processes," Robinson, 41 Va. App. at 142-43, 583 S.E.2d at 63, when he attempted to use the court's own forms to short-cut the garnishment process by having ADP set up the garnishment before it was even filed with the district court. As a result of Becker's intentional acts, the district court was required to use its time and resources to return the improperly withheld checks and issue an order to stop garnishing wages for a garnishment that had never been entered. This "tend[ed] to bring the court into disrepute," id., as it resolved this situation that Becker had created. The evidence was sufficient to support the court's vindication of its dignity by holding Becker in contempt.

Further, any error in admitting the district court's certification and the incorporated transcript was harmless.

We therefore affirm Becker's conviction.

Affirmed.

- 14 -