PUBLISHED

COURT OF APPEALS OF VIRGINIA

Present:    Judges Huff, Malveaux and Senior Judge Annunziata
Argued by videoconference

KELLY LAMONT POOLE

                                                    OPINION BY
v.        Record No. 1177-20-1          JUDGE MARY BENNETT MALVEAUX
                                                    JULY 20, 2021
COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF THE CITY OF NORFOLK
Michelle J. Atkins, Judge

Charles E. Haden (Nikeva S. Bailey, on brief), for appellant.

Timothy J. Huffstutter, Assistant Attorney General (Mark R.
Herring, Attorney General, on brief), for appellee.


Kelly Lamont Poole ("appellant") was convicted of rape, in violation of Code § 18.2-61.

On appeal, he challenges the sufficiency of the evidence supporting his conviction. Appellant

contends that the evidence failed to prove beyond a reasonable doubt that the sexual activity at issue

was nonconsensual. He also argues that due to existing case precedent, the Commonwealth was

required to prove additional elements of rape because the victim was his spouse. For the following

reasons, we affirm.

I. BACKGROUND

"In accordance with familiar principles of appellate review, the facts will be stated in the

light most favorable to the Commonwealth, the prevailing party at trial." Gerald v.

Commonwealth, 295 Va. 469, 472 (2018) (quoting Scott v. Commonwealth, 292 Va. 380, 381

(2016)).

At the time of trial, T.T.[1] and appellant had been married for six years and had two children together. T.T. described the marriage as "[v]ery rocky. Lots of infidelity. Lots of pain." The couple discussed separating "on and off all the time for the whole marriage."

In April 2018, the couple lived together in a two-bedroom apartment. The children shared one bedroom while appellant and T.T. shared the other. T.T. testified that the couple "slept in the same bed but [had] separate blankets with a pillow between the two of us."

T.T. testified that on the evening of April 19, 2018, appellant "asked me or . . . suggested that we ha[ve] intercourse." T.T. told appellant no and went to sleep. T.T. testified that she was not wearing clothes that night because she did not sleep in clothes as they made her feel restricted. During the night, T.T. woke to find appellant "on top of [her]." T.T. asked appellant to stop and shoved him. Appellant "had his arm . . . pushing [her] neck up and forcing [her] legs over and putting all his weight as [T.T.] was trying to move around and get out from underneath him." To get appellant to stop, T.T. tried to put her legs up, "kneeing him as much as [she] could" and "pushing with [her] arms trying to twist away." Appellant "counteracted" every move T.T. made. T.T. could not remove herself from underneath appellant, and "he just kept going." T.T. "asked him to stop, and he told [her] no." T.T. asked appellant to stop at least ten times. Appellant "kept just telling [T.T.] that he was going to, and it was [her] fault, and that he can have it, it's his, he can take it." While appellant was on top of T.T., he put his penis in her vagina. Appellant remained on top of T.T. for about twenty minutes. Afterwards, T.T.'s neck and arms were sore, and she had some bruising on her legs for a couple of days.

T.T. testified that prior to that evening, she had last had sex with appellant on April 6, 2018.

---

[1] We use initials, instead of the victim's name, to protect her privacy.

After the sexual encounter, T.T. went back to sleep and appellant laid down on his side of their bed. In the morning, T.T. went to work because she had already missed too many days of work and could not risk being fired. During the day, T.T. messaged appellant asking why he had "do[ne] that to [her]," and appellant did not "direct[ly]" respond to that question. Immediately after work, T.T. went to the police and reported what had happened. She then went to the hospital and was examined by a sexual assault nurse examiner ("SANE nurse"). The Commonwealth introduced photos of T.T. taken at the hospital that showed bruising on her leg.

Claire Sampson, the SANE nurse who examined T.T. at the hospital, noted a perianal abrasion which she described as "superficial." Sampson recalled that T.T. complained of vaginal and rectal discomfort and pain. Sampson testified that the perianal injury was not likely a result of digital penetration, was not a result of a bowel movement, and that T.T. did not report any consensual anal intercourse or use of sex toys. Sampson did not note any vaginal injuries. She further testified that there did not have to be an injury for sex to have been nonconsensual.

Analysis of a DNA sample collected from T.T. by Sampson indicated that appellant's semen was present in T.T.'s vagina.

Detective D.B. O'Connor of the Norfolk Police Division spoke with T.T. at the police station and recalled that she was "upset." He then spoke to appellant and asked him about T.T.'s allegation. Appellant initially stated that he and T.T. had not had intercourse for about a month. After O'Connor informed appellant that DNA evidence had been collected from T.T. at the hospital, appellant admitted that they had had sex on the night of April 19, 2018. Appellant told the detective that T.T. "wasn't really into it," but that when he agreed to give her a Percocet pill, she consented. Another officer examined appellant and found a small scratch on his shoulder. Appellant claimed he had scratched himself. The officer noted that appellant's fingernails were very short.

Following the Commonwealth's evidence, appellant moved to strike, arguing that the evidence was insufficient to establish that he had raped T.T. The court denied the motion.[2]

Appellant, testifying on his own behalf, denied having raped T.T. and claimed that the intercourse had been consensual. He stated that on the night of April 19, 2018, T.T. had asked for a Percocet pill for back pain, and he had refused to give it to her. Appellant testified that T.T. had initiated the sexual contact, had "put [him] on top," and had "put [his] penis inside her." Appellant stated that T.T. had "never said no," but acknowledged that "in the beginning, she wasn't into it." He also stated that T.T.'s communications with him during the day on April 20, 2018, had been normal, and she had not asked why he had raped her. He admitted that, on April 21, 2018, he had said in messages to T.T., "Whatever I did, I'm sorry. I knew something was up." He asserted that in 2011 T.T. had told him that she had been raped by a previous boyfriend, but that she had later stated that this allegation was false.

In closing argument, appellant again argued that the evidence was insufficient to prove the offense. The trial court found appellant guilty of rape, noting that it found appellant's "version of what happened incredible" and T.T.'s "version credible."

Following trial, appellant filed a motion to reconsider. Citing Weishaupt v. Commonwealth, 227 Va. 389 (1984), and Kizer v. Commonwealth, 228 Va. 256 (1984), he argued that to be convicted of rape of a spouse, the Commonwealth must prove that the victim's conduct demonstrated a *de facto* termination of the marriage. The trial court held a hearing on the motion for reconsideration in which it denied the motion.

This appeal followed.

---

[2] The court did grant appellant's motion to strike a charge of forcible sodomy.

## II. ANALYSIS

Appellant challenges the sufficiency of the evidence supporting his conviction for rape. "In reviewing a challenge to the sufficiency of the evidence, we affirm the trial court's judgment 'unless it appears from the evidence that the judgment is plainly wrong or without evidence to support it.'" Alvarez Saucedo v. Commonwealth, 71 Va. App. 31, 47 (2019) (quoting Horton v. Commonwealth, 255 Va. 606, 608 (1998)). "In conducting our review, we do not substitute our own judgment for that of the factfinder." Bondi v. Commonwealth, 70 Va. App. 79, 87 (2019). Instead, this Court "must . . . ask whether '*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" Crowder v. Commonwealth, 41 Va. App. 658, 663 (2003) (quoting Kelly v. Commonwealth, 41 Va. App. 250, 257 (2003) (*en banc*)). In addition, "[w]e view the evidence in the light most favorable to the Commonwealth as the prevailing party at trial." Alvarez Saucedo, 71 Va. App. at 47.

However, when "a sufficiency challenge ultimately 'presents the question whether the facts proved, and the legitimate inferences drawn from them, fall within the language of a statute, we must construe statutory language to answer the question. That function presents a pure question of law which we consider *de novo* on appeal.'" Blackwell v. Commonwealth, 73 Va. App. 30, 44 (2021) (quoting Hannon v. Commonwealth, 68 Va. App. 87, 92 (2017)).

Code § 18.2-61(A) provides, in pertinent part, that "[i]f any person has sexual intercourse with a complaining witness, whether or not his or her spouse . . . and such act is accomplished . . . against the complaining witness's will, by force, threat or intimidation . . . he or she shall be guilty of rape."

Although not included in the statutory language of Code § 18.2-61(A), appellant asserts that in this case, existing precedent required the Commonwealth to prove additional elements to convict him of rape in this case because the victim was his spouse. Appellant relies on

Weishaupt and Kizer as the case law supporting his argument.  In Weishaupt, after examining English common law principles of marital rape, the Virginia Supreme Court noted that at common law, marriage included an implied consent to sexual intercourse, but that such consent could be revoked.  227 Va. at 399.  However, "[t]he English courts refused to accept a unilateral revocation of consent to marital sex by the wife even if that revocation was manifested by the wife's moving out and filing for divorce."  Id.  In deciding the facts of Weishaupt, the Court refused to apply this requirement, based on the principle that common law "doctrines and principles as are *repugnant to the nature and character of our political system, or which the different and varied circumstances of our country render inapplicable to us*, are either not in force here, or must be . . . modified in their application as to adapt them to our condition."  Id. at 400 (quoting Foster v. Commonwealth, 96 Va. 306, 310 (1898)).  Instead, the Court, modifying common law principles, held

> that a wife can unilaterally revoke her implied consent to marital sex where . . . she has made manifest her intent to terminate the marital relationship by living separate and apart from her husband; refraining from voluntary sexual intercourse with her husband; and, in light of all the circumstances, conducting herself in a manner that establishes a *de facto* end to the marriage.  And, once the implied consent is revoked, even though the parties have not yet obtained a divorce, the husband can be found guilty of raping his wife, if the evidence against him establishes a violation of Code § 18.2-61.

Id. at 405.

In Kizer, the Supreme Court, applying Weishaupt, reversed a husband's conviction for raping his wife, finding that in a case involving marital rape, "the prosecution, in addition to establishing a violation of the general rape statute, Code § 18.2-61, must prove beyond a reasonable doubt that the wife unilaterally had revoked her implied consent to marital intercourse."  228 Va. at 260.  The Court further held that "[t]he wife's revocation of consent must be demonstrated by a manifest intent 'to terminate the marital relationship.'"  Id. at 261

- 6 -

(quoting Weishaupt, 227 Va. at 405). Viewed together, Weishaupt and Kizer establish that while our Supreme Court rejected that part of the English common law rule involving marital rape that prohibited a wife from unilaterally revoking her implied consent to marital intercourse, the Court retained the common law requirement that a spouse manifest an intent to terminate the marital relationship.

Relying on these cases, appellant argues that here, because there was no manifestation by T.T. of her intent to terminate the marital relationship with appellant, the court erred in finding the evidence sufficient to support his conviction for rape. We reject appellant's argument because later amendments to Code § 18.2-61 clearly demonstrate that the common law rule regarding marital rape has been entirely abrogated by statute.

"The common law of England, insofar as it is not repugnant to the principles of the Bill of Rights and Constitution of this Commonwealth, shall continue in full force within the same, and be the rule of decision, *except as altered by the General Assembly*." Code § 1-200 (emphasis added). "The common law will not be considered as altered or changed by statute unless the legislative intent is plainly manifested. A statutory change in the common law is limited to that which is expressly stated or necessarily implied because the presumption is that no change was intended." Boyd v. Commonwealth, 236 Va. 346, 349 (1988) (citation omitted). "However, 'where it is apparent that the legislature has made a value judgment with respect to certain behavior, it follows that the legislature intended to abrogate to that extent the common law . . . .'" Collins v. Commonwealth, 57 Va. App. 355, 362 (2010) (alteration in original) (quoting Long v. Commonwealth, 23 Va. App. 537, 544 (1996)). In addition, "a presumption exists that a substantive change in law was intended by an amendment to an existing statute." Commonwealth v. Bruhn, 264 Va. 597, 602 (2002) (quoting Virginia-Am. Water Co. v. Prince William Cnty. Serv. Auth., 246 Va. 509, 517 (1993)).

As appellant acknowledges, Code § 18.2-61 has been amended a number of times subsequent to the Weishaupt and Kizer decisions. Most importantly for our analysis, in 2005, the General Assembly amended the statute by adding language to subsection A providing that a person was guilty of rape by having forcible sex with another, "whether or not his or her spouse." See 2005 Va. Acts ch. 631.[3]

Upon review, it is clear that this amendment to Code § 18.2-61 plainly shows the General Assembly's intent to remove any additional elements needed for a conviction of rape when the defendant and victim are spouses. The General Assembly's intent could not be more clear in the added language of the current statute that prohibits forcible sex with another "whether or not his or her spouse." Code § 18.2-61(A). See Young v. Commonwealth, 273 Va. 528, 533 (2007) ("When statutory language is unambiguous, we are bound by the plain meaning of that language and may not give the words a construction that amounts to holding that the General Assembly did not mean what it actually stated."). By enacting this amendment, the General Assembly "plainly manifested" an intent to abrogate the common law rule treating rape of a spouse in a different manner as expressed in the Weishaupt and Kizer decisions. Boyd, 236 Va. at 349. Therefore, we conclude that the common law rule regarding marital rape and the holdings applying this rule in Weishaupt and Kizer have been entirely abrogated by the General

_____

[3] The statute was also amended in relevant ways in 1986 and 2002. In 1984, the year Weishaupt and Kizer were decided, Code § 18.2-61 provided in pertinent part that a defendant was guilty of rape by having "sexual intercourse with a female . . . and such act is accomplished (i) against her will, by force, threat or intimidation, or (ii) through the use of the female's mental incapacity or physical helplessness . . . ." Following our Supreme Court's decisions in Weishaupt and Kizer, in 1986 the General Assembly amended Code § 18.2-61 by creating subsection B which codified marital rape as a separate offense. See 1986 Va. Acts ch. 516. That version of the statute provided that a spouse could be convicted of rape if the parties "lived separate and apart" or if "the defendant caused serious physical injury to the spouse by the use of force or violence." Code § 18.2-61 (1988). In 2002, the General Assembly amended Code § 18.2-61(B) by removing the "separate and apart" and "physical injury" requirements. See 2002 Va. Acts ch. 810.

Assembly's 2005 amendment to Code § 18.2-61; thus, the trial court did not err in denying appellant's motions to strike and reconsider on this ground.[4]

Appellant further argues that the evidence was insufficient to support his conviction for rape because the Commonwealth's evidence failed to prove beyond a reasonable doubt that the sexual activity at issue was nonconsensual. Appellant asserts that the evidence did not exclude the possibility that T.T. lied about being raped because she was angry with appellant about his infidelity and other sources of marital disharmony.

Here, T.T. gave a detailed account of the events of April 19, 2018. She testified that appellant penetrated her vagina with his penis against her will and in spite of her repeated protests. She also emphasized that she struggled with appellant to no avail and that he forced himself on her. "The credibility of the witnesses and the weight accorded the evidence are matters *solely for the fact finder* who has the opportunity to see and hear that evidence as it is presented." Commonwealth v. Perkins, 295 Va. 323, 328 (2018) (quoting Elliott v. Commonwealth, 277 Va. 457, 462 (2009)). In addition, "a conviction for rape and other sexual offenses may be sustained solely upon the uncorroborated testimony of the victim." Wilson v.

---

[4] Contrary to this conclusion, appellant argues that other parts of Code § 18.2-61 demonstrate the General Assembly's intent to treat rape of a spouse in a different manner than rape generally. Code § 18.2-61(B)(2) provides, in relevant part, that the trial court may suspend all or part of a sentence imposed for a violation under Code § 18.2-61 if the offense was committed against a spouse and the defendant completes therapy. Code § 18.2-61(C) provides, in relevant part, that "[u]pon a finding of guilt under this section, when a spouse is the complaining witness in any case tried by the court without a jury, the court, without entering a judgment of guilt" may defer proceedings, place defendant on probation, and later dismiss the proceedings. These provisions show that appellant is correct in that Code § 18.2-61 does treat rape against a spouse differently. Significantly, however, these provisions demonstrate only that the General Assembly distinguishes rape against a spouse *after* the court has either convicted the defendant and is in the sentencing phase, under Code § 18.2-61(B)(2), or has made "a finding of guilt," under Code § 18.2-61(C). Therefore, we conclude, based on the statutory scheme, that the General Assembly's clear intent was to make the marital status of the defendant and the victim immaterial during the guilt phase, but to allow a court to treat rape of a spouse differently in the punishment phase.

Commonwealth, 46 Va. App. 73, 87 (2005). "As we have noted, '[b]ecause sexual offenses are typically clandestine in nature, seldom involving witnesses to the offense except the perpetrator and the victim, a requirement of corroboration would result in most sex offenses going unpunished.'" Id. at 88 (alteration in original) (quoting Garland v. Commonwealth, 8 Va. App. 189, 192 (1989)). Here, in its role as fact finder, the trial court explicitly found T.T.'s testimony credible, and we do not disturb this finding on appeal.

Additionally, T.T.'s testimony was corroborated in part by the forensic evidence and the photographs of her injuries.

Further, the court "was at liberty to discount [appellant's] self-serving statements as little more than lying to conceal his guilt." Becker v. Commonwealth, 64 Va. App. 481, 495 (2015) (quoting Armstead v. Commonwealth, 56 Va. App. 569, 581 (2010)). After initially claiming that he and T.T. had not had sexual intercourse in over a month, appellant admitted to having intercourse the evening of April 19 when confronted with the fact that DNA had been collected from T.T. during her SANE examination. The trial court permissibly rejected appellant's testimony and accepted T.T.'s statements that appellant had accomplished the sexual intercourse against her will by force.

In the instant case, upon consideration of all the evidence, the fact finder could reasonably have concluded that appellant had sexual intercourse with T.T. against her will and by force. Therefore, the trial court did not err in convicting appellant of rape.

### III. CONCLUSION

We hold that the trial court did not err in denying appellant's motion to strike and motion for reconsideration because the evidence was sufficient to support his conviction for rape. Accordingly, we affirm.

Affirmed.