COURT OF APPEALS OF VIRGINIA

Present: Judges Humphreys, Huff and Athey

JESSIE LEE BRANCH

v.      Record No. 1793-22-1

COMMONWEALTH OF VIRGINIA

MEMORANDUM OPINION*
PER CURIAM
DECEMBER 5, 2023

FROM THE CIRCUIT COURT OF THE CITY OF NORFOLK
Jerrauld C. Jones, Judge

(J. Barry McCracken, Assistant Public Defender, on brief), for
appellant.

(Jason S. Miyares, Attorney General; Lucille M. Wall, Assistant
Attorney General, on brief), for appellee.

The Circuit Court of the City of Norfolk ("trial court") convicted Jessie Lee Branch

("Branch") of misdemeanor destruction of property and three counts of violating a protective order.[1]

On appeal, Branch contends that the Commonwealth's evidence was insufficient to sustain his

convictions. After examining the briefs and record in this case, the panel unanimously holds that

oral argument is unnecessary because Branch's appeal is "wholly without merit." Code

§ 17.1-403(ii)(a); Rule 5A:27(a). As a consequence, we affirm the convictions.

I. BACKGROUND

On appeal, we recite the facts "in the 'light most favorable' to the Commonwealth, the

prevailing party in the trial court." *Hammer v. Commonwealth*, 74 Va. App. 225, 231 (2022)

(quoting *Commonwealth v. Cady*, 300 Va. 325, 329 (2021)). Doing so requires us to "discard the

---

* This opinion is not designated for publication. *See* Code § 17.1-413(A).

[1] The trial court dismissed a trespassing charge against Branch.

evidence of the accused in conflict with that of the Commonwealth, and regard as true all the credible evidence favorable to the Commonwealth and all fair inferences to be drawn therefrom." *Cady*, 300 Va. at 329 (quoting *Commonwealth v. Perkins*, 295 Va. 323, 324 (2018)).

In May of 2022, Angela Morrow ("Morrow") and Branch were dating and had lived together for five months. On May 10, 2022, after an alleged incident of abuse, Morrow sought and was granted a protective order against Branch which expired three days later on May 13, 2022, at 11:59 p.m. Pursuant to the terms of the protective order, Morrow was granted exclusive possession of their shared residence and Branch was prohibited from contacting Morrow or being in her physical presence.

At trial, Morrow testified that on May 13, 2022, at approximately 9:28 a.m., she received several text messages from Branch's cellphone, including a video message depicting him and two of his friends "rapping with each other" in a car. Morrow further testified that she knew the number was Branch's because her phone listed his name and photo at the top of the contact associated with the number. She had also messaged his number several times and had paid Branch's cellphone bill "multiple times." Branch left messages advising Morrow that he loved her and wanted to retrieve his clothes from their former residence. He also requested that Morrow "call [him]" to "just talk."

During the night of May 15, Morrow testified that she was awakened by Branch "banging on [her] window" and "yelling and hollering all types of nonsense." The video footage from her Ring doorbell camera was entered in evidence, confirming Branch's presence outside her house that night. Morrow also identified Branch as the person "screaming" on the video based, in part, on her recognition of his voice. Her testimony and video footage further confirmed that Branch "began kicking and banging on the [front] storm door" before walking around the house to the back door where he tried to kick in the back door. Morrow also testified that she was forced to lean against the back door to prevent his entry into the house. Finally, Morrow testified that before leaving, Branch

threw a broken coffee table against the back door.[2] Because of the property damage caused by Branch, Morrow had to replace the front storm door.

At the conclusion of the Commonwealth's evidence, Branch moved to strike Morrow's testimony as being insufficient to prove that he violated the protective order and damaged Morrow's property. In support thereof, he contended that the Commonwealth failed to prove that he caused the property damage to Morrow's residence or that he communicated with Morrow. The trial court denied Branch's motion to strike.

Branch then testified on his own behalf that he had been arrested on May 12, 2022, and released the next day. As a result, he contended that he could not have contacted Morrow by cellphone on May 13 because when he was arrested and later released, he did not possess any personal items, including his cellphone. He further testified that Morrow was in possession of his cellphone during the period of his alleged violation of the protective order because he had left the cellphone in her truck after the May 10 incident. In addition, Branch denied sending the text messages allegedly received by Morrow at 9:28 a.m. because he had not retrieved his cellphone on May 13 until long after Morrow testified that he had sent the text messages to her. Moreover, Branch testified that he had not had any contact with Morrow since the incident which led to the protective order and only communicated with Morrow through third parties. Although Branch did acknowledge that he was in the video message sent to Morrow, he observed that the video footage could have been created and posted to her messages at any time. Concluding his testimony, Branch denied going to Morrow's residence and causing the property damage at issue on May 15, 2022. Branch rested his case and renewed his motion to strike, arguing that he had testified credibly and that his testimony was consistent and unimpeached. Thus, he asserted the Commonwealth neither

---

[2] The entire incident lasted approximately 45 minutes. Morrow had called the police during this event, but they did not arrive until an hour and a half later.

proved he was the person sending the messages nor that he was present at Morrow's residence damaging the property. The trial court denied the renewed motion to strike, and following closing arguments, convicted Branch on all three counts of violating a protective order and for destruction of property. Branch appealed.

## II. ANALYSIS

### A. *Standard of Review*

"When reviewing the sufficiency of the evidence, '[t]he judgment of the trial court is presumed correct and will not be disturbed unless it is plainly wrong or without evidence to support it.'" *McGowan v. Commonwealth*, 72 Va. App. 513, 521 (2020) (alteration in original) (quoting *Smith v. Commonwealth*, 296 Va. 450, 460 (2018)). "In such cases, '[t]he Court does not ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt.'" *Id.* (alteration in original) (quoting *Secret v. Commonwealth*, 296 Va. 204, 228 (2018)). "Rather, the relevant question is whether '*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *Vasquez v. Commonwealth*, 291 Va. 232, 248 (2016) (quoting *Williams v. Commonwealth*, 278 Va. 190, 193 (2009)). "If there is evidentiary support for the conviction, 'the reviewing court is not permitted to substitute its own judgment, even if its opinion might differ from the conclusions reached by the finder of fact at the trial.'" *McGowan*, 72 Va. App. at 521 (quoting *Chavez v. Commonwealth*, 69 Va. App. 149, 161 (2018)).

### B. *The trial court did not err in convicting Branch because the record includes sufficient evidence in support of its verdict that Branch violated the protective order and damaged Morrow's property.*

Branch argues that the trial court erred in finding that the Commonwealth introduced sufficient evidence to convict him of violating the protective order and damaging Morrow's

- 4 -

property because Morrow's testimony was "limited" and relied on "assumption[s]" while his testimony was "credib[le]" and "not impeached." We disagree.

"At trial, the Commonwealth bears the burden of proving the identity of the accused as the perpetrator beyond a reasonable doubt." *Cuffee v. Commonwealth*, 61 Va. App. 353, 364 (2013) (quoting *Blevins v. Commonwealth*, 40 Va. App. 412, 423 (2003)). As with "any element" of an offense, the Commonwealth may prove the defendant's identity through direct or circumstantial evidence. *Crawley v. Commonwealth*, 29 Va. App. 372, 375 (1999). "[C]ircumstantial evidence is competent and is entitled to as much weight as direct evidence provided that the circumstantial evidence is sufficiently convincing." *Pijor v. Commonwealth*, 294 Va. 502, 512 (2017) (alteration in original) (quoting *Dowden v. Commonwealth*, 260 Va. 459, 468 (2000)). "While no single piece of evidence may be sufficient, the combined force of many concurrent and related circumstances . . . may lead a reasonable mind irresistibly to a conclusion." *Id.* at 512-13 (alteration in original) (quoting *Muhammad v. Commonwealth*, 269 Va. 451, 479 (2005)). Moreover, our review "does not distinguish between direct and circumstantial evidence, as the fact finder itself 'is entitled to consider all of the evidence, without distinction, in reaching its determination.'" *Commonwealth v. Moseley*, 293 Va. 455, 463 (2017) (quoting *Commonwealth v. Hudson*, 265 Va. 505, 513 (2003)).

Here, the totality of the evidence presented compels the conclusion that Branch sent the text messages to Morrow in violation of the protective order and that he caused the damage to her property. Hence, Morrow's testimony that the text messages appeared on her phone from a contact with Branch's name and photo and the fact that Morrow was in a relationship with Branch at the time of the incident and had texted with Branch with this saved number many times before sufficiently infers that Branch was in fact the individual who was contacting her in violation of the protective order. Morrow had also paid this particular cellphone bill for Branch "multiple times,"

and the contents of the text messages themselves corroborate her testimony as well. Morrow had also recently excluded Branch from their residence due to the protective order, thus the subject of the messages requesting clothing from the residence and to "talk" with Morrow were consistent with her version of events. Moreover, one of the messages was a video recording of Branch, further substantiating Morrow's claim that Branch sent the text messages violating the protective order.

Morrow's testimony and Ring doorbell footage also sufficiently established that Branch was the perpetrator responsible for the property damage at her residence. Morrow recognized Branch both from the "yelling and hollering" and from seeing him on her Ring doorbell camera on the night the property damage occurred.

Even though Branch testified that he did not send the messages and did not destroy Morrow's property, the trial court "was at liberty to discount [his] self-serving statements as little more than lying to conceal his guilt." *Poole v. Commonwealth*, 73 Va. App. 357, 369 (2021) (quoting *Becker v. Commonwealth*, 64 Va. App. 481, 495 (2015)). In addition, although Branch asserted that his testimony was credible, consistent, and unimpeached, and that Morrow's testimony was colorable, Branch confirmed his culpability, in part, by admitting that he *communicated*, albeit through third parties, with Morrow during the time the protective order was effective. Branch also, to his detriment, acknowledged that he was one of the persons in the video recording sent to Morrow. Thus, the trial court was entitled to reject Branch's testimony and infer that his prevarications were made "in an effort to conceal his guilt." *Covil v. Commonwealth*, 268 Va. 692, 696 (2004). Finally, "[d]etermining the credibility of witnesses . . . is within the exclusive province of the [fact finder], which has the unique opportunity to observe the demeanor of the witnesses as they testify." *Dalton v. Commonwealth*, 64 Va. App. 512, 525 (2015) (second alteration in original) (quoting *Lea v. Commonwealth*, 16 Va. App. 300, 304 (1993)). Here, the trial court was well within its discretion in believing Morrow's testimony and rejecting Branch's

testimony as self-serving. Moreover, since the Commonwealth's evidence was competent, not inherently incredible, and sufficient to sustain Branch's convictions, the trial court did not err in finding Branch guilty of violating the order protecting Morrow and for damaging property at her residence.

### III. CONCLUSION

For the foregoing reasons, the trial court's judgment is affirmed.

*Affirmed.*